WARGO BUILDERS, INC., APPELLEE, *v.* DOUGLAS L. COX PLUMBING & HEATING, INC., APPELLANT.

2

*Mr. Joseph E. Feighan, Jr.*, for appellee.
*Mr. Roy Wilt*, for appellant.

KRENZLER, J. This action was brought by plaintiff, appellee herein, a general contractor, against defendant, appellant herein, for the breach of an alleged subcontract. A judgment was returned for plaintiff. Defendant appeals on the grounds that the verdict is not substantiated by the evidence, that the verdict is against the weight of the evidence, and that the verdict is contrary to law. Plaintiff filed no cross-appeal. At the trial, without a jury, the court made the following findings of fact.

(1) On April 21, 1965, defendant made an oral offer to plaintiff to perform a subcontract for plumbing and fixtures, and heating and ventilation, for $26,080, in the construction of additions and alterations to St. Barnabas School, Northfield, Ohio.

(2) On the afternoon of the same day, plaintiff submitted a general contractor's bid to St. Barnabas, and included in this bid the figures of $26,080 for plumbing and fixtures, heating and ventilation, based upon defendant's offer.

(3) On April 30, 1965, St. Barnabas awarded the general contract, including the plumbing and heating work, to plaintiff.

(4) On May 7, 1965, defendant notified plaintiff that it would not do the plumbing and heating work, unless it were paid an additional $3,000 more than its original offer of $26,080.

(5) Shortly thereafter, plaintiff entered into a new subcontract for the plumbing and heating work, with a third party, at a price of $32,000.

The trial court made a further finding of fact that there was a contract between the defendant and plaintiff

at the price of $29,080 and plaintiff's damages for defendant's breach of this contract were $2,920.

The trial court was in error. When the plaintiff accepted defendant's continuing offer of $26,080 there was a binding contract between plaintiff and defendant.

In this appeal we are not concerned with the amount of the actual damages, inasmuch as this was not urged upon us. Therefore, we will not disturb this finding of the trial court.

Defendant in this case offered to perform for a stated price. Plaintiff used this offer in computing and submitting its bid on the principal contract, and in so doing relied upon defendant's offer to perform. When plaintiff was awarded the principal contract, it was contractually bound to perform, or secure the performance of, the work covered by the defendant's offer, at defendant's stated price. Based on the evidence, this is what defendant anticipated. Under these circumstances, it would be unreasonable to permit defendant to withdraw or revoke its offer. The subcontractor's offer must remain open for acceptance by the general contractor for at least a reasonable time after the general contract is awarded.

We can find no authority on precisely this issue in the Ohio cases. However, there seems to be some growing support for the view stated above in other jurisdictions. *N. Litterio & Co.* v. *Glassman Constr. Co.* (D. C. Cir., 1963), 319 F. 2d 736; *Air Conditioning Co. of Hawaii* v. *Richards Constr. Co.* (D. Haw., 1963), 200 F. Supp. 167, *aff'd on other grounds* (9th Cir., 1963), 318 F. 2d 410; *Solway Decorating Co.* v. *Merando, Inc.* (D. C., 1970), 264 A. 2d 501; *E. A. Coronis Assoc.* v. *M. Gordon Construction Co.* (1965), 90 N. J. Super. 69, 216 A. 2d 246; *Reynolds* v. *Texarkana Construction Co.* (1964), 237 Ark. 583, 374 S. W. 2d 818; *Union Tank Car Co.* v. *Wheat Brothers* (1964), 15 Utah 2d 101, 387 P. 2d 1000; *Drennan* v. *Star Paving Co.* (1958), 51 Cal. 2d 409, 333 P. 2d 757; *Norcross* v. *Winters* (1962), 209 C. A. 2d 207, 25 Cal. Rptr. 821; *Northwestern Engineering Co.* v. *Ellerman* (1943), 69 S. D. 397, 10 N. W. 2d 879. *Contra, James Baird Co.* v. *Gimbel Bros., Inc.* (2d

Cir., 1933), 64 F. 2d 344; *Southeastern Sales and Service Co. v. T. T. Watson, Inc.* (Fla., 1965), 172 So. 2d 239. The rationale of this view is well stated in the *Drennan* case, *supra*, by Judge Traynor when he said the following at page 415:

"When plaintiff used defendant's offer in computing his own bid, he bound himself to perform in reliance on defendant's terms. Though defendant did not bargain for this use of its bid neither did defendant make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by plaintiff in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater defendant's chance of getting the paving subcontract. Defendant had reason not only to expect plaintiff to rely on his bid but to want him to. Clearly defendant had a stake in plaintiff's reliance on its bid. Given this interest and the fact that plaintiff is bound by his own bid, it is only fair that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him."

Thus, the subcontractor was required in this case to keep his offer open for a reasonable time. He could not be bound to perform, however, unless the general contractor accepted this offer. The trial court found that defendant notified plaintiff it would not perform unless it were paid an additional $3,000. There is also uncontroverted evidence that, when it did so, defendant knew plaintiff had been awarded the principal contract, and that shortly thereafter plaintiff sent defendant a telegram demanding that he begin performance under the subcontract at the originally stated price. We believe these circumstances are sufficient to show an acceptance of defendant's offer by plaintiff. Defendant was thus bound to perform, and is

liable in damages for his failure to do so. The evidence supports a finding of damages of at least $2,920, the judgment given by the trial court.

We are not confronted with a case such as *James Baird Co. v. Gimbel Bros., Inc., supra,* in which a subcontractor withdrew his offer after the general contractor had submitted his bid, but two days *before* the general contract was awarded. We need not now decide whether the subcontractor would be bound in such a case.

This is also not a case in which a defendant subcontractor's retraction of his offer resulted from a mistake on his part, which should have been obvious to the offeree. For example, a subcontractor's offer might be so low as to put the offeree on notice of a probable mistake. But such a fact is not shown here; indeed, plaintiff apparently called defendant before submitting his bid to verify defendant's offer, and received assurances that the figure used was correct.

Finally, we recognize that a subcontractor might furnish a bid, quote, or estimate to a general contractor, expressly reserving the right to withdraw it at any time; or otherwise disclaiming any intention to be bound to perform. In that event, the subcontractor would not be bound, for it would not have made an offer, at any rate not an irrevocable offer, and there could be no reasonable reliance by the general contractor. But this is not such a case. The trial court here found, on sufficient evidence, that the defendant made an offer which was accepted.

*Judgment affirmed.*

WASSERMAN and MANOS, JJ., concur.