LYON METAL PRODUCTS, INCORPORATED, Defendant-Appellant,

v.

HAGERMAN CONSTRUCTION CORPORATION, Plaintiff-Appellee.

No. 3–477A108.

Court of Appeals of Indiana, Third District.

July 16, 1979.

---

John H. Heiney, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for defendant-appellant.

Michael H. Kast, Shambaugh, Kast & Beck, Craig R. Finlayson, Fort Wayne, for plaintiff-appellee.

GARRARD, Presiding Judge.

This is an appeal from a judgment in favor of Hagerman Construction Corporation (Hagerman) in an action for damages resulting from the failure of Lyon Metal Products, Inc. (Lyon) to provide Hagerman with athletic lockers for a school construction project in accordance with a bid Lyon submitted to Hagerman.

In February 1974, Hagerman was preparing a bid for the general construction of Hamilton Southwestern Middle School. One of the items it was required to bid upon was athletic lockers and related equipment. Lyon became aware of this project, obtained approval from the project's architect and submitted a uniform bid to the 12 or 13 general contractors who would be bidding on the project. On or about February 12, 1974, Hagerman received a written bid from Lyon for the lockers in the amount of $16,824.00. The bid was on a Lyon's quotation form. On the bottom of the form, in small print, the following limitation is found: "This quotation is subject to final acceptance and approval by our home office at Aurora, Illinois and the further condition contained on the reverse side hereof." On the reverse side, in smaller print yet, eight conditions are found. One of these has relevance to this appeal: "This quotation may be withdrawn and is subject to change without notice after 15 days from date of quotation." The specifications for the project, which Lyon admittedly read, required that bids remain open for 120 days.

Lyon's bid for the lockers was the lowest of the four received by Hagerman and was used by Hagerman in computing its bid. Lyon expected and intended that Hagerman would use Lyon's bid, if low, in its bid.[1]

---

1. The testimony of Ronald Langevin, Lyon's sales representative for the area, on this point was as follows:

"Q. Now at the time that you submitted this bid to Hagerman and the other general contractors, what did you intend for them to do with this bid?
A. To use it in the pricing of the project and subsequently award us an order on said lockers.

On February 12, 1974, Hagerman was informed it was the lowest bidder on the project. Lyon learned of this three or four days later. On March 1st, Hagerman sent Lyon a letter of intent which stated:

"Due to many uncertainties of prices and availability of materials, we are issuing this letter of intent covering your proposal for work and/or materials on the above named project. The formal contracts and purchase orders will be issued after the bond sale and financing is completed by the Tri-County Holding Corporation and after we receive their contract for the work. Barring any complications, we would expect this to be done on June 10, 1974. If you have not sent us a written confirmation of a telephone bid, send it to us by return mail."

Lyon did not respond to this letter.

Hagerman was notified of the completion of the bond sale and financing on May 22, 1974 and sent a formal contract to Lyon on or about June 5, 1974. Unfortunately the contract was not mailed to the address printed on Lyon's quotation form. Hagerman was unable to establish why the erroneous address was, in fact, used. However, it did establish that the address was the one which at that time appeared as the address of Lyon in the yellow pages of the telephone directory. On August 2, 1974, Hagerman sent to the same address a follow-up letter inquiring why the signed contract had not been returned. Lyon denied receiving either of these communications. However, Lyon took no steps during this time to discover why Hagerman had not sent the contracts as it had said it would. In early August, the Cincinnati office of Lyon contacted its sales representative in Chicago and inquired whether an order from Hagerman had been obtained. Without contacting either Langevin, the sales representative who had made the bid, or Hagerman, the Chicago sales representative suggested that Lyon withdraw its bid as no order had

been received. On September 6, 1974, Lyon through its Cincinnati office, mailed Hagerman notice that it was withdrawing the bid due to recent price increases. Hagerman, after receipt of this notice, made several attempts to get Lyon to supply the lockers at the quoted price. Lyon instead submitted a new price of $28,750.00; $12,000.00 more than its original bid. Hagerman obtained the lockers from another supplier at a cost of $24,787.00.

The trial court entered judgment in favor of Hagerman in the sum of $7,963.00 based upon the doctrine of promissory estoppel. The sole issue upon appeal is whether the court erred in applying the doctrine to the facts of this case.

The doctrine of promissory estoppel, embodied in Section 90 of the Restatement of Contracts, provides that:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise."

Although the doctrine was traditionally recognized in cases involving donative or gratuitous promises (ex charitable subscriptions),[2] it is now well accepted that promissory estoppel applies with equal force in commercial transactions, including construction bid cases.

The leading case in this area is *Drennan v. Star Paving Co.* (1958), 51 Cal.2d 409, 333 P.2d 757. The case involved an oral bid by a subcontractor for paving work on a school project on which Drennan, the general contractor, was about to bid. The subcontractor's bid was the lowest and Drennan computed his own bid using the subcontractor's bid. Drennan was the successful bidder but the subcontractor informed him the next day that it would not do the work at the quoted price. The court applied the doctrine of promissory estoppel to prevent the

---

Q. Was it not your intent and perhaps your hope that if this bid were the low bid, it would be incorporated in the general contractor's bid which subsequently might lead for them to get the contract and thus you would get the contract?

A. Yes." Transcript p. 160, lines 4–14.

2. *See James Baird Co. v. Gimbel Bros.* (2d Cir. 1933), 64 F.2d 344.

subcontractor's revocation of the bid, stating:

"Defendant's offer constituted a promise to perform on such conditions as were stated expressly or by implication therein or annexed thereto by operation of law. (See 1 Williston, Contracts [3rd ed.] § 24A, p. 56, § 61, p. 196.) Defendant had reason to expect that if its bid proved the lowest it would be used by plaintiff. It introduced 'action . . . of a definite and substantial character on the part of the promisee.'

\* \* \* \* \* \*

"The absence of consideration is not fatal to the enforcement of such a promise. It is true that in the case of unilateral contracts the Restatement finds consideration for the implied subsidiary promise in the part performance of the bargained-for exchange, but its reference to section 90 makes clear that consideration for such a promise is not always necessary. The very purpose of section 90 is to make a promise binding even though there was no consideration 'in the sense of something that is bargained for and given in exchange.' (See 1 Corbin, Contracts 634 et seq.) Reasonable reliance serves to hold the offeror in lieu of the consideration ordinarily required to make the offer binding.

\* \* \* \* \* \*

"When plaintiff used defendant's offer in computing his own bid, he bound himself to perform in reliance on defendant's terms. Though defendant did not bargain for this use of its bid neither did defendant make it idly, indifferent to whether it would be used or not. On the contrary it is reasonable to suppose that defendant submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by plaintiff in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater defendant's chance of getting the paving subcontract. Defend-

ant had reason not only to expect plaintiff to rely on its bid but to want him to. Clearly defendant had a stake in plaintiff's reliance on its bid. Given this interest and the fact that plaintiff is bound by his own bid, it is only fair that plaintiff should have at least an opportunity to accept defendant's bid after the general contract has been awarded to him."
333 P.2d 759–60.

In a similar case, the Supreme Court of South Dakota held that "Obviously it would seem unjust and unfair, after appellant was declared the successful bidder and imposed with all the obligations of such, to allow respondents to retract their promise and permit the effect of such retraction to fall upon the appellant. . . . [W]e believe that reason and justice demand that the doctrine be applied to the present facts. We cannot believe that by accepting the doctrine as controlling in the state of facts before us we will abolish the requirement of a consideration in contract cases, in any different sense than an ordinary estoppel abolishes some legal requirement in its application." *Northwestern Engineering Co. v. Ellerman* (1943), 69 S.D. 397, 407–8, 10 N.W.2d 879, 883–4.

Other cases which have applied the doctrine of promissory estoppel to construction bid cases are: *Janke Construction Co., Inc. v. Vulcan Materials Co.* (7th Cir. 1976), 527 F.2d 772; *Robert Gordon, Inc. v. Ingersoll-Rand Co.* (7th Cir. 1941), 117 F.2d 654; *Debron Corp. v. National Homes Construction Corp.* (8th Cir. 1974), 493 F.2d 352; *N. Litterio & Co. v. Glassman Constr. Co.* (1963), 115 U.S.App.D.C. 335, 319 F.2d 736; *Saliba-Kringlen Corp. v. Allen Engineering Co.* (1971), 15 Cal.App.3d 95, 92 Cal.Rptr. 799; *Union Tank Car Co. v. Wheat Bros.* (1964), 15 Utah 2d 101, 387 P.2d 1000; *S.N. Nielsen v. National Heat & Power Co., Inc.* (1975), 32 Ill.App.3d 941, 337 N.E.2d 387; *Wargo Builders, Inc. v. Douglas L. Cox Plumbing and Heating, Inc.* (1971), 26 Ohio App.2d 1, 268 N.E.2d 597.

■ We accept the rationale of these cases and conclude that the doctrine of promissory estoppel as embodied in § 90 of the Restatement of Contracts is applicable

in cases involving commercial transactions as well as those involving gratuitous promises.

Having reached this conclusion, our task is to determine whether there was sufficient evidence of probative value in the case at bar to support each of the elements of promissory estoppel, viz: (1) whether Lyon made a definite promise to Hagerman with the reasonable expectation that the promise would induce action of a definite and substantial character on the part of Hagerman; (2) whether the promise induced such action; (3) whether Hagerman acted in justifiable reliance upon the promise to its detriment; and (4) whether injustice can be avoided only by enforcement of the promise.

■ At the outset, it must be remembered that this court, in reviewing the judgment, will consider the evidence most favorable to the appellee and will reverse only if the evidence entitles the appellant to a finding in his favor as a matter of law. *Verhulst v. Hoffman* (1972), 153 Ind.App. 64, 286 N.E.2d 214; *Industrial Laundry v. Review Board of Indiana Employment Security Division* (1970), 147 Ind.App. 40, 258 N.E.2d 160. It is only where the evidence is without conflict and can lead to but one conclusion and the trial court has reached an opposite conclusion that the decision of the trial court will be set aside on the grounds that it is contrary to law. *Pokraka v. Lummus Co.* (1952), 230 Ind. 523, 104 N.E.2d 669.

■ Lyon offered to supply a given quantity of specified kinds of lockers at a stated price. It realized that if its quote or bid was the lowest received by Hagerman that Hagerman would use the Lyon bid in computing its own bid. In fact, Lyon not only realized that its promise would induce action of a definite and substantial character, it was Lyon's express intention that this would occur. Hagerman did use the Lyon bid in computing its bid, which subsequently bound Hagerman to provide the lockers to the school corporation at the price quoted. Lyon was notified by the letter of intent that Hagerman intended to have Lyon supply the lockers at the quoted price.

When Lyon refused to supply the lockers at the price quoted, Hagerman was forced to incur the loss of $7,963.00.

Lyon asserts that Hagerman could not have reasonably relied on its offer since the offer expressly stated that it was subject to withdrawal or modification 15 days after the date it was given. We acknowledge that several cases have stated in dicta that if the bid states that it was revocable or reserves a right of withdrawal or otherwise disclaims any intention to be bound, there could be no reasonable reliance by the general contractor. *See Drennan v. Star Paving Co.* (1958), 51 Cal.2d 409, 333 P.2d 757; *Wargo Builders, Inc. v. Douglas L. Cox Plumbing and Heating, Inc.* (1971), 26 Ohio App.2d 1, 268 N.E.2d 597. However, we have determined that there was sufficient evidence of probative value from which the trial court could have found justifiable reliance notwithstanding the 15 day clause. The evidence established that the project specifications required that the bids be held open for 120 days. Lyon's attempted variation of this specification was printed in small letters on the back of its quote along with seven other conditions and the reference to the conditions on the reverse side was itself in small print. Hagerman's agent testified that he barely glanced at the conditions. Lyon made no special effort at any time to apprise Hagerman of the 15 day clause. After it had received the letter of intent which referred to "uncertainty of prices" and the reason for delay in sending the formal contract, Lyon did not inform Hagerman that its bid would be adjusted by increases in prices. Furthermore Langevin, Lyon's agent, testified that more than 120 days had elapsed when the bid was withdrawn in September. From this evidence, the trial court could have inferred that Lyon did not intend the 15 day clause to be the controlling time period but rather the 120 day period found in the specifications.

■ Lyon also contends that Hagerman's failure to provide the formal contract until September 1974 relieves it of any obligation which it might have incurred. We cannot accept this contention. Although Hagerman, after March, was sending the correspondence to the incorrect address, Lyon

could be found equally at fault for the lengthy lapse in communication. It was aware in early March that the formal contract was expected to be mailed in June. Lyon made no attempt at any time to discover why it had not received a contract. In August, when the Cincinnati office inquired of one of its agents of the status of the project, the agent responded that no contract had been received and advised a withdrawal of the bid. This agent admitted that he had so recommended without checking with Langevin, to whom the contracts were supposed to be mailed, or Hagerman. Hagerman had no way of knowing that its mail was not being received as nothing had been returned to it by the postal authorities. Lyon was aware that Hagerman was low bidder and that Hagerman was relying on it to supply the lockers at the quoted price. The project specifications, of which Lyon was aware, adequately informed it of the extent of its obligations.

For these reasons, we conclude that the trial court did not err in finding that Lyon was liable to Hagerman under the theory of promissory estoppel.

Affirmed.

HOFFMAN, J., concurs.

STATON, J., concurs in result.