**TRACO, INC., a THREE RIVERS ALUMINUM COMPANY, Appellant,**

**v.**

**ARROW GLASS CO., INC., Appellee.**

No. 04–90–00382–CV.

Court of Appeals of Texas, San Antonio.

July 24, 1991.

Rehearing Denied Aug. 26, 1991.

Robert W. Loree, Hubert W. Green, Green, McReynolds & Reed, San Antonio, Thomas J. Madigan, Cohen & Grigsby, P.C., Pittsburgh, Pa., for appellant.

Hugh L. McWilliams, Burns & O'Gorman, Franklin S. Spears, Christa Brown, Branton & Hall, P.C., San Antonio, for appellee.

Before CHAPA, PEEPLES and BIERY, JJ.

## OPINION

CHAPA, Justice.

The motion for rehearing is granted, the opinion delivered on May 8, 1991 is withdrawn, and the following opinion is substituted therefor.

This is a construction dispute stemming from a quotation given by Traco, Inc., A Three Rivers Aluminum Company[1], a material supplier of pre-engineered aluminum and glass sliding doors and windows, to Arrow Glass Company, Inc.[2], a subcontractor, in connection with the USAA Towers project in San Antonio, Texas. Arrow initially brought suit against Traco on the theories of promissory estoppel and negligence for Traco's failure to supply aluminum and glass sliding doors at the quoted price. After a bench trial, the trial court held for Arrow solely under the theory of promissory estoppel and awarded Arrow judgment against Traco for damages in the amount of $75,843.38, plus attorneys' fees and prejudgment interest.

---

1. Hereinafter "Traco."

2. Hereinafter "Arrow."

Appellant raises the following points of error:

1. the trial court erred in rendering judgment for Arrow because Traco's bid was revocable and properly withdrawn thirty days after it was made;

2. the trial court erred in rendering judgment for Arrow because the evidence is legally and factually insufficient to support recovery under the doctrine of promissory estoppel;

3. the trial court erred in rendering judgment for Arrow because the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of law that Traco made an unconditional bid to Arrow and that Traco's bid was final;

4. the trial court erred in rendering judgment for Arrow because the evidence is legally and factually insufficient to support the trial court's findings of fact that Traco could have reasonably foreseen that Arrow would rely on its bid;

5. the trial court erred in rendering judgment for Arrow because the evidence is legally and factually insufficient to establish that an injustice has been done to Arrow and to support the trial court's conclusion of law that Arrow sustained its alleged damages on October 9, 1986;

6. the trial court erred in rendering judgment for Arrow because the evidence is legally and factually insufficient to support the trial court's findings of fact that Arrow's purported reliance upon Traco's bid was reasonable, customary, detrimental and justified;

7. the trial court erred in rendering judgment for Arrow because the evidence is legally and factually insufficient to support the findings of fact that Arrow did not engage in bid chiseling or bid shopping practices or that it is not guilty of laches or unclean hands;

8. the trial court erred in awarding Arrow attorneys' fees for a cause of action based on promissory estoppel; and,

9. the trial court erred in awarding Arrow prejudgment interest at a rate of ten percent per annum.

■ Appellant initially argues that the trial court erred in rendering judgment for Arrow because Traco's bid was revocable and properly withdrawn thirty days after it was made. Appellant primarily relies upon the argument that its sliding doors are goods as defined by the Texas Business and Commerce Code, therefore, § 2.205 of this code is controlling. TEX.BUS. & COM.CODE ANN. § 2.205 (Vernon 1968) (stating that "[a]n offer ... to buy or sell goods *in a signed writing* ... is not revocable ... during the time stated ...") (emphasis added). Nevertheless, appellant's arguments ignore the appellee's basic contention and legal theory under which this suit was brought. Appellee sought relief under the equitable doctrine of promissory estoppel on the premise that appellant's promises, by way of its *oral* bid, caused appellee to substantially rely to its detriment. Consequently, appellant's assertion that its subsequent letter confirming this bid somehow invokes the application of the Uniform Commercial Code ignores the fact that the appellee relied to its detriment when it reduced its bid based on a telephone conversation with the appellant, prior to the time appellant's confirmation letter was sent or received. Thus, any subsequent written document is irrelevant to Arrow's cause of action; appellant's first point is rejected.

Having resolved that the Uniform Commercial Code does not apply under these facts, we must now resolve whether the equitable theory of promissory estoppel applies to bid construction cases and, if so, whether this doctrine applies under the specific facts of this case.

■ While no Texas case has previously applied the theory of promissory estoppel in a bid construction case, other jurisdictions have consistently applied this doctrine under similar facts, recognizing the necessity for equity in view of the lack of other remedies. *N. Litterio & Co. v. Glassman Constr. Co.*, 319 F.2d 736 (D.C.Cir.1963); *Robert Gordon, Inc. v. Ingersoll–Rand*

*Co.*, 117 F.2d 654 (7th Cir.1941); *Drennan v. Star Paving Co.*, 51 Cal.2d 409, 333 P.2d 757 (1958); *Constructors Supply Co. v. Bostrum Sheet Metal Works Inc.*, 291 Minn. 113, 190 N.W.2d 71 (1971); *E.A. Coronois Assoc. v. M. Gordon Constr. Co.*, 90 N.J.Super. 69, 216 A.2d 246, 249 (1966); *Wargo Builders, Inc. v. Douglas L. Cox Plumbing & Heating, Inc.*, 26 Ohio App.2d 1, 268 N.E.2d 597 (1971); *Northwestern Eng'g Co. v. Ellerman*, 69 S.D. 397, 10 N.W.2d 879 (1943).

Moreover, the Texas Supreme Court, in emphasizing that the underlying function of the theory of promissory estoppel is to promote equity, has stated that:

> The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted ... This remedy is always so applied as to promote the ends of justice.

*Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965). Clearly, promissory estoppel is "a rule of equity" applied to prevent injustice. *Koelzer v. Pizzirani*, 718 S.W.2d 420, 423 (Tex.App.—Fort Worth 1986, no writ).

As is true in most, if not all, bid construction cases, the present situation does not involve a contract. Therefore, were we to hold that promissory estoppel does not exist in bid construction cases, this would necessarily mean that, notwithstanding any language or conduct by the subcontractor which leads the general contractor to do that which he would not otherwise have done and, thereby, incur loss or injury, the general contractor would be denied all relief. This proposition is untenable and conflicts with the underlying premise of promissory estoppel. *Wheeler*, 398 at 96; *Koelzer*, 718 S.W.2d at 423. Accordingly, we find that promissory estoppel is a viable cause of action in bid construction cases.

Appellant also argues that the trial court erred in rendering judgment for Arrow because the evidence is legally and factually insufficient to support the following: recovery under the doctrine of promissory estoppel; the trial court's findings of fact

and conclusions of law that Traco made an unconditional bid to Arrow and that Traco's bid was final; the trial court's findings of fact that Traco could have reasonably foreseen that Arrow would rely on its bid; the trial court's findings of fact that Arrow's purported reliance upon Traco's bid was reasonable, customary, detrimental and justified; the trial court's findings of fact that Arrow did not engage in bid chiseling or bid shopping practices or that it is not guilty of laches or unclean hands; and, the trial court's conclusion of law that plaintiff sustained its alleged damages on October 9, 1986. We will address these related points conjunctively.

 We note, initially, that in considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (great weight and preponderance); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Additionally, "[i]n a nonjury case, the trial court is the judge of the credibility of the witnesses and of the weight to be given their testimony." *Cheek v. Humphreys*, 800 S.W.2d 596, 598 (Tex.App.—Houston [14th Dist.] 1990, writ denied), citing *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex.App.—Dallas 1989, writ denied).

"Unless the trial court's findings are challenged by a point of error on appeal, they are binding upon the appellate court." *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.), citing *Zelios v. City of Dallas*, 568 S.W.2d 173, 175 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). "The trial judge, as

the trier of the fact, may draw reasonable inferences from the evidence, and his findings of fact may not be disregarded on appeal if the record contains some evidence of probative value from which these inferences may be drawn, or unless the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong." *IFG Leasing Co. v. Ellis,* 748 S.W.2d 564, 565–566 (Tex.App.--Houston [1st Dist.] 1988, no writ), citing *Nicholas v. Crocker,* 687 S.W.2d 365, 367 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). "When findings of fact are filed and are unchallenged, ... they occupy the same position and are entitled to the same weight as the verdict of a jury." *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). "Thus, unless there is no evidence to support the finding or unless the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong, the appellate court may not set it aside." *Valencia v. Garza,* 765 S.W.2d 893, 896 (Tex.App.—San Antonio 1989, no writ), citing *Corporate Personnel Consultants v. Wynn Oil Co.,* 543 S.W.2d 746, 748 (Tex.Civ.App.—Texarkana 1976, no writ).

The Texas Supreme Court has also held that:

> In determining whether the trial court's findings are supported by any evidence of probative value, we will give credence only to the evidence favorable to the findings and will disregard all evidence to the contrary. The findings of fact and the conclusions of law will be construed together; and if the findings of fact are susceptible of different constructions, they will be construed, if possible, to be in harmony with the judgment and to support it.

*Brown v. Frontier Theatres, Inc.,* 369 S.W.2d 299, 301 (Tex.1963).

"A trial court's findings of fact are reviewable for legal and factual sufficiency of evidence to support them and conclusions of law are reviewable when attacked as a matter of law, but not on grounds of sufficiency of evidence to support them, as if they were findings of fact." *Mercer v. Bludworth,* 715 S.W.2d 693, 697 (Tex.

App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), citing *First Nat'l Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ. App.—Tyler 1979, writ ref'd n.r.e.). "The principal usefulness of conclusions of law is to denote to the appellate court the theory on which the action was tried" and "[i]f the controlling finding of facts will support a correct legal theory, incorrect legal conclusions will not require a reversal." *Valencia,* 765 S.W.2d at 898, citing *De Benavides v. Warren,* 674 S.W.2d 353, 362 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.).

Section 90 of the RESTATEMENT (SECOND) OF CONTRACTS (1981) states the principle of promissory estoppel as follows: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Accordingly, the requirements of promissory estoppel are: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment." *English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983), citing *Aubrey v. Workman,* 384 S.W.2d 389, 393 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.). Furthermore, a promise has been defined as "[a] declaration which binds the person who makes it, either in honor, conscience, or law, to do or forbear a certain specific act, and which gives to the person to whom made a right to expect or claim the performance of some particular thing." BLACK'S LAW DICTIONARY 1092 (5th ed. 1979).

In order "[t]o invoke the doctrine of estoppel, all the necessary elements of estoppel must be present" and the failure to establish even one of these elements is fatal to the claimant's cause of action. *Douglas v. Aztec Petroleum Corp.,* 695 S.W.2d 312, 317 (Tex.App.—Tyler 1985, no writ). Additionally, courts have emphasized that "estoppel requires a *reasonable* or *justified* reliance on the conduct or statement of the person sought to be estopped by the person seeking the benefits of the doctrine." *Simpson v. MBank Dallas, N.A.,* 724 S.W.2d 102, 108 (Tex.App.—

Dallas 1987, writ ref'd n.r.e.) (emphasis in original); *Douglas,* 695 S.W.2d at 317. This is especially true as "[t]he doctrine of estoppel is intended to promote justice" and, therefore, "the reliance of the party asserting it must have been in good faith." *Houston Gen. Ins. Co. v. Lane Wood Indus., Inc.,* 571 S.W.2d 384, 391 (Tex.Civ. App.—Fort Worth 1978, no writ).

The facts of this case reflect that on or about October 9, 1986, construction bids were due for the USAA Towers, a $49,000,-000 retirement housing project located near Fort Sam Houston, Texas. There were numerous suppliers, subcontractors and general contractors bidding to obtain work on this project, including the appellant, Traco, and the appellee, Arrow.

On bid day, a representative for Arrow received a telephone call from Dale Ferrar of Traco. Mr. Ferrar told Bill Morris, the general manager of Arrow Glass, that Traco was a very large window and sliding glass aluminum door manufacturer in Pennsylvania. Mr. Ferrar offered its A–2 aluminum and glass sliding doors, as an alternate product substitution, to Arrow, which was bidding that portion of the project. However, after some discussion of the required specifications, the parties realized that Traco's doors would have to be modified in order to comply with the project specifications. Arrow declined to use Traco's bid and, instead, submitted its original bid, using a different supplier of doors.

At approximately noon on bid day, Mr. Ferrar phoned Mr. Morris, quoting a new price for the doors which included a modification of the frame depth which, supposedly, enabled the doors to comply with the specifications. At this time, Mr. Morris informed Mr. Ferrar that his bid was low and asked him to recheck his figures. Mr. Ferrar explained that because of Traco's size and the fact that it could manufacture its products under one roof, Traco could sell the project for that amount. Mr. Ferrar also indicated that Traco was seeking a high profile project to represent Traco in the San Antonio area.

After receiving these assurances, Mr. Morris told Mr. Ferrar that he was going to use Traco's bid. Mr. Morris then phoned the contractors to whom he had originally submitted his bid, and deducted $100,000 in reliance upon Traco's bid. Mr. Morris later told Mr. Ferrar that he had received favorable responses from three or four general contractors, and that it appeared Arrow would get the project. Mr. Morris advised Mr. Ferrar that if Arrow obtained the project, then Traco would be awarded the contract on the doors.

The oral quote by Traco was followed with a written bid confirmation on the next day, which reflected the product that would be supplied and the price agreed upon by the parties. The confirmation also included the 1¼" frame extender at a cost of $27,-860, which, allegedly, brought the doors into compliance with the project specifications.

Sometime in November, long after Mr. Morris had relied upon Mr. Ferrar's representations in submitting his bid, Mr. Morris began hearing rumors that there was a problem with the door. Mr. Morris contacted Mr. Ferrar, who admitted that there was a problem with the doors meeting the architect's wind load deflection requirement in the specifications. Shortly after learning of this problem, Mr. Morris received a second quote from Traco, wherein Traco offered its A–3 doors, which were a more expensive, heavy grade commercial door that met the deflection requirement, for a price of $304,300. After receiving this bid, Morris objected to the price and demanded that Traco deliver doors meeting the project specifications at the original price quoted. Traco refused and when it became obvious that Arrow would not be able to use Traco's product, Mr. Morris contracted with another supplier who had bid on the project.

The record clearly reflects the following: that it was Traco that initially contacted Arrow and offered to do a certain specific act, i.e., supply the sliding doors required; that Mr. Ferrar phoned Mr. Morris on several occasions and discussed, among other things, the fact that the doors which Traco

wished to bid would not comply with the specifications without some modification; and, that Mr. Ferrar assured Mr. Morris that the doors could be modified to comply with the specifications. Thus, under the present facts, Traco's bid gave Arrow "a right to expect or claim the performance of some particular thing"; specifically, Traco's bid constituted a promise to supply sliding doors meeting the project specifications at a specified price.

Appellant insists, however, that because Traco was not an approved manufacturer and bid its doors as an alternate, that by its nature, Traco's bid was conditional and, therefore, promissory estoppel cannot lie. Appellant also argues that the appellee failed to list appellant's bid as a voluntary deduct in its own bid and instead, chose the more disastrous course of incorporating Traco's lower price into its base bid. Nevertheless, the appellant was aware that its doors required the architect's approval, and appellant submitted its bid nonetheless. Moreover, the appellant discussed the specifications with the appellee, which refused to accept Traco's initial offer because the appellant's doors did not meet project specification. Upon modifying its doors and assuring the appellee that its doors met the specifications, the appellant successfully convinced the appellee to rely upon its bid.

■ We fail to see how a bid for a specific door at a specific price, which was submitted in response to solicitations that detailed project specifications, is contingent, or somehow not final, merely because the wrong door was bid upon. Clearly, the bid would have been final had the architect approved the doors, and surely architectural approval would have been acquired had the doors complied with the necessary specifications. In the present case, the appellee solicited bids on a specific product and required that certain specifications be met; additionally, the appellee relied upon the appellant's assurances that its doors complied with these specifications. Thus, the appellant's failure to receive the architect's approval was not due to new specifications but was caused by the appellant's failure to regard those specifications originally required when the appellant offered its doors. Appellant's point is rejected.

■ Notwithstanding the existence of this promise, the appellant argues that appellee could not have justifiably and reasonably relied upon appellant's bid because: Traco was not an approved manufacturer and bid its A–2 doors as an alternate and, further, Traco's bid was lower than the other suppliers who bid upon the contract.

However, the record reflects that Traco modified its doors and led Arrow to believe that the doors complied with the specifications. Moreover, the record establishes that it was foreseeable that Arrow would rely upon this promise, especially in view of the following facts: Mr. Morris told Mr. Ferrar that he was going to use Traco's bid, after being led to believe the doors now complied with the specifications; Mr. Morris did, in fact, reduce his bid in reliance upon Traco's bid; and, Mr. Morris told Mr. Ferrar that Traco would get the job if Arrow received the project. Additionally, although Traco was offered the opportunity to recheck its figures, Traco refused to do so and, instead, assuaged Arrow's doubts concerning its low bid by stating that because of Traco's size, Traco could manufacture its products under one roof, thereby selling its doors at a more competitive rate.

Also, there was evidence that Arrow substantially relied to its detriment. While the appellant argues that another subcontractor would have been the low bidder had Arrow not reduced its bid, there was evidence that the Turner Construction Company did not, necessarily, have to award the contract to the lowest bidder. Moreover, because of the withdrawal of Traco's bid, Arrow was compelled to seek another supplier of doors at a much greater cost; clearly, this constituted an injustice to the appellee. Additionally, appellee's reliance upon appellant's bid was reasonable in view of the appellant's attempts to modify its doors, and Mr. Ferrar's assurances that the doors, as modified, would meet the project specifications.

■ Appellant also asserts that the trial court erred in rendering judgment for

the plaintiff because the evidence is legally and factually insufficient to support the findings of fact that plaintiff did not engage in bid chiseling or bid shopping practices or that it is not guilty of laches or unclean hands.

Mr. Ferrar testified that Mr. Morris never attempted to persuade him to reduce the price listed in the confirmation sent to Arrow. Moreover, Mr. Morris and Douglas Anderson, the branch manager for the general contractor, Turner Construction Company, both testified that the parties did not engage in bid chiseling or bid shopping practices.

As "the judge of the credibility of the witnesses and of the weight to be given their testimony", the trial judge was free to believe or disbelieve any witnesses, and to assess the weight to be given to the testimony of each witness. *Cheek,* 800 S.W.2d at 598; *Tate,* 767 S.W.2d at 224. Clearly, the trial judge here looked favorably upon the testimony of the witnesses that supported his findings of fact, and the elements of promissory estoppel, which he was entitled to do. *Id.*

Applying the appropriate standards of review, invoking the reasonable inferences, and construing the findings, when possible, in harmony with and in support of the judgment, we hold that there is sufficient evidence to support the challenged findings; further, the challenged findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. *Davis,* 752 S.W.2d at 522; *Pool,* 715 S.W.2d at 635; *Brown,* 369 S.W.2d at 301. We further hold that the controlling findings of fact support the promissory estoppel theory which is in harmony with the judgment. *Id.*

Lastly, appellant contends that the trial court erred in awarding Arrow attorney's fees for a cause of action based on promissory estoppel and, in awarding Arrow prejudgment interest at a rate of ten percent per annum.

■ "In Texas the well-settled law is that attorney's fees are not recoverable in an action unless provided by statute or a contract between the parties." *Williams v. Northrup,* 649 S.W.2d 740, 748 (Tex. App.—Tyler 1983, writ ref'd n.r.e.).

However, TEX.CIV.PRAC. & REM. CODE ANN. § 38.001 (Vernon 1986), which is a codification of former article 2226, TEX.CIV.STAT.ANN. (Vernon Supp.1982–83), provides for the recovery of reasonable attorney's fees "in addition to the amount of a valid claim and costs, if the claim is for: (8) an oral or written contract." Section 38.005 of this same code provides that "[t]his chapter shall be liberally construed to promote its underlying purposes." Further, TEX.CIV.PRAC. & REM.CODE ANN. § 1.001 provides that the purpose of the code "contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change."

The Texas Supreme Court, in emphasizing the legislative intent of article 2226, stated:

> We hold that a proper construction of article 2226 is to allow recovery of attorney's fees incurred in prosecuting a just claim under the article, even if the amount of the claim is entirely offset by an opposing party's claim. *This is more consistent with the legislative intent to discourage a party from unnecessarily litigating and defending a just claim within article 2226. Tenneco Oil Co. v. Padre Drilling Co.,* 453 S.W.2d 814, 819 (Tex.1970). In addition, the statute was formerly strictly construed; however, the legislature amended article 2226 to mandate that '[t]his Act shall be liberally construed to promote its underlying purposes.'

*McKinley v. Drozd,* 685 S.W.2d 7, 11 (Tex. 1985) (emphasis added).

Further, the Fifth Circuit, in interpreting Texas case and statutory law under similar facts, has allowed recovery of attorney's fees in a promissory estoppel case. *Preload Technology, Inc. v. A.B. & J. Constr. Co., Inc.,* 696 F.2d 1080, 1094 (5th Cir. 1983). After noting that comment to § 90 of the Restatement (Second) of Contracts states that "[a] promise binding under this section is a contract", the court maintained:

We have, in effect, implied an enforceable promise on [appellee's] part to keep its bid open, much like an option. Texas appellate courts have allowed recovery of attorney's fees under the 'oral or written contracts' clause of Article 2226 on the basis of implied contractual promises, *Guardian Bank v. San Jacinto Savings Ass'n*, 593 S.W.2d 860 at 863 (Tex.Civ.App.—Houston [1st] 1980, [writ ref'd n.r.e.]), and in litigation to cancel an expired contractual right of first refusal. *Ellis v. Waldrop*, 627 S.W.2d 791 at 798 (Tex.App.—Fort Worth 1982, [aff'd in part, rev'd in part, 656 S.W.2d 902 (1983)]) (contract suit provision of Article 2226 not limited 'to suits for breach of contract'). *Cf. Corsicana Petroleum Co. v. Owens*, 110 Tex. 568, 222 S.W. 154 at 155 (1920) (an option is a contract, which is valid and binding if supported by consideration).

. . . .

[F]ollowing the spirit of the foregoing authorities and the legislative injunction that Article 2226 is to be liberally construed, ... we hold that [appellant's] promissory estoppel recovery in the instant case is within this provision of Article 2226. Hence, we sustain the award of attorney's fees.

*Id.* at 1094–95 (footnotes omitted).

Moreover, "[t]he burden is on the appellant, or other party seeking review, to see that a sufficient record is presented to show error requiring reversal." TEX. R.APP.P. 50(d). TEX.R.APP.P. 74(f) further requires that the appellant present persuasive authority justifying reversal. In the present case, the appellant has failed to meet its burden, and has also failed to present persuasive authority which would justify reversing the trial court's judgment. TEX.R.APP.P. 74(f). Additionally, we find the federal decision rendered in *Preload Technology, Inc.* well reasoned and persuasive, and see no reason why its holdings should not be controlling in the present case. Therefore, we find the trial judge did not err in awarding attorney's fees in this instance. Appellant's point is rejected.

■ Appellant next argues that the court erred in awarding appellee interest at the higher rate of ten percent per annum because TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987) justifies awarding appellee only six percent interest. Appellee contends that the court was correct in applying the higher rate because article 5069–1.03 only applies to "contracts ascertaining the sum payable" and, therefore, the higher rate prescribed by *Cavnar v. Quality Control Parking, Inc*, 696 S.W.2d 549, 552 (Tex.1985) is applicable.

Article 5069–1.03 provides:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987).

The Texas Supreme Court has "recognized two separate bases for the award of prejudgment interest: (1) an enabling statute and (2) general principles of equity...." *Cavnar*, 696 S.W.2d at 552, citing *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 485 (Tex.1978). "The primary objective of awarding damages in civil actions has always been to compensate the injured plaintiff, rather than to punish the defendant", and "[a] law that denies recovery of prejudgment interest frustrates this goal" because "plaintiffs are not fully compensated." *Cavnar*, 696 S.W.2d at 552. In personal injury suits "as a matter of law, a prevailing plaintiff may recover prejudgment interest compounded daily (based on a 365–day year) on damages *that have accrued by the time of judgment*" "at the prevailing rate that exists on the date judgment is rendered according to the provisions of Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 § 2 (Vernon Supp.1985)...." *Id.* at 554 (emphasis in original; footnote omitted).

"By its express terms, the statutory prejudgment interest rate set forth in article 5069–1.03 applies only to 'accounts and con-

tracts ascertaining the sum payable'" and, thus, cannot be the basis for awarding pre-judgment interest unless "the contract provide[s] the conditions upon which liability depends and that it fix 'a measure by which the sum payable can be ascertained with reasonable certainty.'" *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929, 930 (Tex. 1988).

Clearly, the provisions of article 5069–1.03 are not applicable here, since this case does not involve "'a measure by which the sum payable can be ascertained with reasonable certainty,'" much less, a "contract ascertaining the sum payable." *Id.* Thus, appellant has failed in its burden of presenting persuasive authority to justify reversing the judgment of the trial court with respect to the interest provisions. TEX.R.APP.P. 50(d). The complaint is rejected.

The judgment is affirmed.