R.P. CARBONE CONSTRUCTION COMPANY, Appellant,

v.

NORTH COAST CONCRETE, INC. et al., Appellees.

[Cite as *R.P. Carbone Constr. Co. v. N. Coast Concrete, Inc.* (1993), 88 Ohio App.3d 505.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62700.

Decided July 6, 1993.

---

*Walter, Haverfield, Buescher & Chockley, Charles T. Riehl, Peter Turner* and *James E. Betts,* for appellant.

*Petro, Rademaker, Matty & McClelland, David J. Matty* and *Bryan P. O'Malley,* for appellees.

---

SPELLACY, Judge.

R.P. Carbone Construction Company, a general contractor, brought this action against North Coast Concrete, Inc., a concrete subcontractor, and Robert Dalrymple, its president, alleging North Coast Concrete refused to perform after Carbone Construction used a bid submitted by North Coast Concrete in making its own successful bid on a project at Fairview General Hospital. The trial court concluded no contract existed and found no basis for enforcing North Coast Concrete's bid under the doctrine of promissory estoppel. Carbone Construction appeals and raises four assignments of error:

"I. The trial court erred in failing to conclude that defendant North Coast Concrete, Inc. was bound, under the doctrine of promissory estoppel, to the terms of its subcontract bid, as subsequently modified by mutual agreement.

"II. The trial court erred in holding that there was no contract between plaintiff-appellant and defendant-appellee North Coast Concrete, Inc.

"III. The trial court's judgment is not sustained by the evidence and is against the manifest weight of the evidence.

"IV. The trial court's judgment is contrary to law."

We find these assignments of error lack merit and affirm the trial court's judgment.

## I

The following pertinent evidence was adduced at trial.

In spring 1987, Carbone Construction decided to submit a bid for a construction project at Fairview General Hospital. On "bid day," April 2, 1987, Carbone Construction took telephone bids for the twenty-six to thirty subcontracts involved in the project. North Coast Construction Concrete submitted a bid of $402,000 for the concrete subcontract. Carbone Construction used this bid when it calculated its own bid for the project.

A week after bid day, Fairview General Hospital informed Carbone Construction that it had won the project. Carbone Construction then contacted its subcontractors, including North Coast Concrete.

On April 13, 1987, Carbone Construction and North Coast Concrete held a meeting to discuss the scope of the concrete subcontract. North Coast Concrete agreed to provide a mud mat if Carbone Construction provided a ramp and eliminated North Coast Concrete's obligation to provide certain site work. In addition, North Coast Concrete reduced the contract price to $375,000 in exchange for Carbone Construction's having only two-percent retainage for material and no retainage for labor. Elvin Berkheimer, Carbone Construction's estimator, testified that North Coast Concrete's obligation to provide a pitman was discussed at this meeting. Dalrymple testified that there was no discussion of a pitman at the meeting.

On May 12, 1987, Carbone Construction and North Coast Concrete held a second meeting. North Coast Concrete told Carbone Construction that it had made an error when it estimated the price for the concrete and Carbone Construction adjusted the contract price to $381,530. Carbone Construction then presented North Coast Concrete with a written contract. North Coast Concrete, however, refused to sign the contract and Carbone Construction eventually performed the concrete subcontract itself. Dalrymple testified North Coast Concrete refused the written contract because it required North Coast Concrete to provide a pitman and did not require Carbone Construction to provide a ramp. He also stated that North Coast Concrete was not satisfied with a clause in the contract concerning the amount of rebar.

Vince Carbone, president of Carbone Construction, testified that after North Coast Concrete refused to sign the written contract, Ross Saporito, from North Coast Concrete, told him North Coast Concrete could not perform the contract for either $381,000 or $402,000 and offered to perform the work on a time and material basis.

Dalrymple testified that North Coast Concrete was willing to perform based on its original bid.

## II

In its first assignment of error, Carbone Construction contends the trial court erred when it found that the doctrine of promissory estoppel did not apply.

Ohio has adopted Section 90 of the Restatement of the Law 2d, Contracts, concerning promissory estoppel. *The Limited Stores, Inc. v. Pan Am. World Airways, Inc.* (1992), 65 Ohio St.3d 66, 73, 600 N.E.2d 1027, 1033. This section provides, in pertinent part:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * *" 1 Restatement of the Law 2d, Contracts (1981) 242, Section 90.

In *Drennan v. Star Paving Co.* (1958), 51 Cal.2d 409, 415, 333 P.2d 757, 760, the California Supreme Court, relying on Section 90, held that a subcontractor's bid was irrevocable when the general contractor used the subcontractor's bid in making its own successful bid on the main contract. In Ohio, *Wargo Builders v. Cox Plumbing & Heating* (1971), 26 Ohio App.2d 1, 55 O.O.2d 23, 268 N.E.2d 597, citing *Drennan,* came to the same conclusion, holding that a subcontractor is bound to perform in accordance with the terms of its offer if, after being awarded the main contract, the general contractor accepts the subcontractor's offer within a reasonable time. Both *Drennan* and *Wargo,* however, recognize that the subcontractor is bound only by the terms of its original offer. *Drennan,* 51 Cal.2d at 415, 333 P.2d at 760; *Wargo,* 26 Ohio App.2d at 3, 55 O.O.2d at 24, 268 N.E.2d at 598.

■ Here, the trial court found that Carbone Construction never accepted North Coast Concrete's offer. The trial court also noted that North Coast Concrete was willing to perform based on the terms of its bid. We find that, based on these findings, the trial court could properly conclude that justice did not require enforcement of North Coast Concrete's bid.

Accordingly, Carbone Construction's first assignment of error is not well taken.

### III

In its second assignment of error, Carbone Construction contends the trial court erred when it failed to find the existence of a contract.

"In order to declare the existence of a contract, both parties to the contract must consent to its terms, there must be a meeting of the minds of both parties, and the contract must be definite and certain." (Citations omitted.) *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134, 137.

■ Here, the trial court found that the parties did not agree to a certain and definite price. Carbone Construction, citing to *Mr. Mark Corp. v. Rush, Inc.* (1983), 11 Ohio App.3d 167, 11 OBR 259, 464 N.E.2d 586, argues that the agreement is enforceable because it covers the essential components of the transaction. Price, however, is clearly an essential component. We find, therefore, that the trial court could properly conclude that no contract existed.

Accordingly, Carbone Construction's second assignment of error is not well taken.

## IV

We address Carbone Construction's third and fourth assignments of error together. In its third assignment of error, Carbone Construction contends the evidence is insufficient to support the judgment and the judgment is not supported by the weight of the evidence. In its fourth assignment of error, Carbone Construction contends the judgment is contrary to law.

In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, the court held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See, also, *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276.

Reviewing the evidence, we find the judgment supported by sufficient evidence. We also find the judgment supported by the weight of the evidence. Finally, we find that the judgment is in accordance to law.

Accordingly, Carbone Construction's third and fourth assignments of error are not well taken.

*Judgment affirmed.*

JOHN F. CORRIGAN and JAMES D. SWEENEY, JJ., concur.