OPINION
Plaintiff-Appellant, Cathy Clark, appeals a decision of the Court of Common Pleas of Allen County granting summary judgment in favor of Defendants-Appellees, Nancy Herman-Thompson, David Herman, Steven Herman, Gary Benjamin and BENA, Inc.
The instant lawsuit was initiated in June, 1996, when Appellant filed a complaint alleging breach of fiduciary duty, misappropriation of a business opportunity and disclosure of trade secrets against Appellees, Nancy Herman-Thompson, individually and as Executrix of the Estate of Englebert Herman, David Herman and Steven Herman. Appellant demanded relief in an amount greater than $25,000 for both compensatory and punitive damages; she also asked the court to impose a constructive trust.
On September 12, 1997, Appellant filed an amended complaint adding Defendants-Appellees, Gary Benjamin, acting in his capacity as president of BENA at all times relevant, and BENA, Inc. (collectively referred to as "BENA"). Appellant added claims of unjust enrichment, breach of contract, and promissory estoppel against all defendants. A claim of tortious interference with contract was also asserted against BENA.
Several depositions were taken as part of the discovery in this case. The following uncontroverted facts were adduced from the deposition testimony:
Englebert Herman ("Bert") was the sole proprietor of PJ Manufacturing, a machine shop based in Allen County, Ohio. Appellant met Bert Herman in 1973 and maintained a continuing friendship with him over the years. In November, 1994, Appellant approached Bert Herman about a new business venture that she discovered during her employment as a customer service manager at another company. At that time, Appellant became aware that AGCO, a large manufacturer of farm machinery, was searching for a new supplier of mower curtains. A mower curtain is a safety device added to agricultural mowers and tractors to prevent debris from flying out from under the machines.
Bert Herman became interested in the idea of manufacturing the curtains and asked his son, Steven Herman, if he wanted to join the venture. Upon hearing the idea, Steven Herman also became interested. In April, 1995, Appellant, Bert Herman and Steven Herman met with Bert's attorney to discuss the establishment of a partnership for the new business. Appellant's testimony reveals that the three indicated that the name of the partnership would be "Samson", but that no other details were finalized. Bert's attorney drafted a letter of intent pursuant to Bert's request, but it was never reviewed or signed.
About the same time, Bert Herman approached AGCO about manufacturing the curtains. AGCO sent Bert the blueprints for the curtains and asked him to manufacture a prototype. Bert contacted BENA to manufacture the prototypes and BENA agreed to do so. At this time, AGCO did not know who manufactured the prototypes. Nonetheless, once the prototypes were completed to AGCO's satisfaction and an acceptable pricing structure was submitted, AGCO agreed to name Samson as its new curtain supplier. Pursuant to a purchase agreement, the first shipment of curtains was scheduled to arrive at AGCO on August 4, 1995.
Unfortunately, Bert Herman died suddenly on July 17, 1995 in Bradenton, Florida. The evidence reveals that although Samson was obligated to start shipping curtains to AGCO within two weeks, Samson was not operating under any kind of written agreement and the alleged partners had not agreed on certain material issues like everyday duties and responsibilities, salaries, division of profits and conflict resolution. Furthermore, at the time of Bert's death, none of the alleged partners contributed any capital to the business, the necessary equipment had not been acquired, production had not begun, banking was not established, all documents were placed on PJ letterhead, and Samson was not registered with the State of Ohio.
Approximately one week after Bert Herman's death, Appellant met with Steven Herman and David Herman to discuss the future of Samson. Steven Herman testified that it was clear that the new mower curtain operation could not be financed without Bert's assistance. Nancy Herman-Thompson also stated that PJ had only $10,000 in its checking account at the time of Bert's death and, as the executrix of the estate, she was directed by counsel to handle the funds carefully. Appellant contends that Steve Herman and Dave Herman were interested in maintaining Samson as a viable business enterprise.
Within a week of Bert's death, Steven Herman contacted William Nungester, a purchasing agent with AGCO, to inform him that Bert had died and that as a result, Samson would not be able to fulfill its obligations. Nungester testified that Appellant also contacted him and asked if he would allow her time to see if she could finance the project on her own; Appellant called shortly thereafter to inform Nungester that she could not obtain the capital. Nungester stated that at that point, he was desperate for a supplier.
During the same period of time, Nungester learned from Steve Herman that BENA had manufactured the curtain prototypes. Nungester met with BENA and stated that BENA was reluctant to take on any new business at that time. However, BENA eventually agreed to act as AGCO's new curtain supplier and quoted prices similar to those previously quoted by Samson. BENA has continued to act as AGCO's supplier since August, 1995.
Although a jury trial was scheduled to commence on November 10, 1998, all defendants named in the amended complaint requested leave to file motions for summary judgment in September 1998. The court granted leave and the motions were filed on September 30th. On October 14, 1998, Appellant filed a motion for an extension of time to respond in accordance with Civ.R. 56(F) because she claimed that necessary discovery had not yet been obtained. The court denied Appellant's request and stated that the motions for summary judgment would be heard without oral argument thirty days from service upon Appellant.
In the meantime, Gary Benjamin's deposition was scheduled for October 26, 1998. Appellant requested that the witness bring, among other items, tax returns for BENA for the years 1994 through 1997; any orders or documents relevant to the sale of any product from BENA to AGCO; evidence of actual production, sales and payments for the mower curtains; and evidence of the cost of production of any item sold to AGCO. Counsel for BENA requested the court to issue a protective order on these items. While the request for a protective order was subsequently denied, the court did not issue its ruling until after the deposition had been completed. Thus, this evidence was not included in Gary Benjamin's deposition testimony.
Thereafter, on October 30, 1998, Appellant filed a second motion for extension of time pursuant to Civ.R. 56(F). This time, Appellant specifically argued that she could not adequately defend against the motions for summary judgment without evidence of BENA's profits from the mower curtain business and that she should be granted additional time in which to redepose Gary Benjamin in order to obtain this information. Appellant filed no response to the summary judgment motions. On November 4, 1998, the trial court denied Appellant's request for additional time and granted summary judgment in favor of all defendants. It is from this decision that Appellant has filed the instant appeal.
For the sake of clarity, we have chosen to address Appellant's second assignment of error first.
Assignment of Error II
 The trial court erred to the substantial prejudice of Plaintiff-Appellant Cathy L. Clark in denying her Motion to Continue the Hearing on the Defendants-Appellees' Motions for Summary Judgment.
We note at the outset that the decision to grant a motion for a continuance pursuant to Civ.R. 56(F) lies within the sound discretion of the trial court. Trimble -Weber v. Weber (1997),119 Ohio App.3d 402, 409; Carlton v. Davisson (1995), 104 Ohio App.3d 636,648. Such a ruling will not be overturned on appeal absent an abuse of discretion. An abuse of discretion has been defined as a decision that is arbitrary, unconscionable or unreasonable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Civ.R. 56(F) states:
 When affidavits unavailable. Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.
Appellant claims that the trial court erred in refusing to allow her additional time to redepose Gary Benjamin to obtain information regarding the profits BENA has derived from its business with AGCO. Appellant argues that she could not defend against the motions for summary judgment in the absence of this discovery. In support of her argument, Appellant cites Tucker v. Webb (1983), 4 Ohio St.3d 121, 122-123, wherein the Supreme Court of Ohio held that summary judgment was erroneous when the opposing party had not been allotted sufficient time to discover critical facts surrounding the alleged transactions that took place between the parties. We find Tucker distinguishable from the present case because it is apparent from the record here that Appellant had sufficient time to discover the essential facts regarding the creation of the alleged partnership.
This lawsuit was commenced in June, 1996 and the amended complaint was filed on September 12, 1997. Several depositions had been taken subsequent to the filing of the amended complaint. Although Appellees filed their motions for summary judgment on September 30, 1998, a jury trial was scheduled to begin within six weeks. This timeline indicates that even without Gary Benjamin's testimony concerning profits and costs, issues which would go to damages rather than liability, Appellant had enough time to conduct meaningful discovery regarding Samson and the nature of the parties' relationships.
We acknowledge that relevant case law states that trial courts should use liberal discretion to grant continuances pursuant to Civ.R. 56(F). Whiteleather v. Yosowitz (1983),10 Ohio App.3d 272, 276. However, the facts of this case do not persuade us that the trial court abused its discretion in denying Appellant's motion.
Appellant's second assignment of error is overruled.
Assignment of Error I
 The trial court erred in Granting Defendants-Appellees' Motions for Summary Judgment.
It is axiomatic that summary judgment should be granted only upon the determination that:
 (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.
Temple v. Wean United (1977), 50 Ohio St.2d 317, 327; Civ.R. 56(C). A reviewing court employs the same standard of review for summary judgments as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129.
Summary judgment is a procedural device that is intended to shortcut the normal litigation process. Since summary judgment can yield a drastic result, trial courts are admonished to resolve any doubt in favor of the nonmoving party. Murray v. Murray (1993), 89 Ohio App.3d 141, 144-145. The Supreme Court of Ohio has set forth certain burdens that must be satisfied by each of the parties before an appropriate decision can be rendered. In Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, the court held that:
 [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact * * * * If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.
We will first address the trial court's decision to grant summary judgment in favor of Nancy Herman-Thompson, David Herman and Steve Herman. It is important to note that the Hermans filed a joint motion in this case. As a threshold matter, we must point out that for whatever reason, the motion for summary judgment filed on behalf of these three defendants only addressed Appellant's claims for breach of fiduciary duty, misappropriation of a business opportunity and disclosure of trade secrets. The court, however, granted summary judgment in favor of these defendants on all claims. We find that this action was erroneous.
It is well established that a trial court has no authority to grant summary judgment on claims that were not particularly argued in the supporting motion or memorandum. Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 94. The record reveals that the Hermans failed to expressly argue or even mention that summary judgment should be granted on Appellant's claims for promissory estoppel, unjust enrichment and breach of contract. Thus, we will reverse the court's decision insofar as it relates to these claims and remand the matter for further proceedings.
As to the grant of summary judgment in favor of the Hermans on the remaining claims of breach of fiduciary duty, misappropriation of a business opportunity and disclosure of trade secrets, we find that the decision of the trial court was appropriate. The proof of these claims, as asserted by Appellant in her amended complaint, depends on whether the three individuals involved in the Samson venture actually created a partnership.
Under Ohio law, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit * * *." R.C. 1775.05(A). Relevant case law states that a contract, written or oral, is vital to the creation of a partnership. Fitzsimmons v. Robertson (Feb. 27, 1995), Carroll App. No. 632, unreported, citing Payne v. Thompson (1886), 44 Ohio St. 192. As a general rule, the parties to a contract must enjoy mutuality of obligation. Id. Thus, the parties to a partnership contract must intend to become partners. Fitzsimmons, supra, citing Farmers Ins. Co. v. Ross Lennan (1876), 29 Ohio St. 429.
The evidence contained in the record illustrates that at no time was there a present agreement for Steven Herman to become a partner with Appellant, and his expressed intention was to consider it only after they could agree on certain essential matters:
 Q. Was there ever a time that you wanted to actively participate in a business venture between your father and Cathy Clark concerning the production and sale of safety curtains for mowers or tractors?
 A. Not until there was something definite as far as duties and responsibilities and percentages and more important things set first.
Q. More important what?
A. Until more important things were set in first.
Q. Did that ever happen?
A. No.
Thus, it is apparent that at the time of Bert Herman's death, Steven Herman had not agreed to act as Appellant's business partner. The evidence further reveals that the members of the alleged partnership did not share in any profits or receipts; they did not own any equipment or supplies and none of the members contributed any capital to the business. Samson was not registered with the State of Ohio and a checking and/or savings account was not established in the alleged partnership name. Therefore, it appears that the defendants demonstrated that a partnership did not exist. In the absence of an existing partnership, no genuine issue of fact remains as to Appellant's claims for breach of fiduciary duty, misappropriation of a business opportunity and disclosure of trade secrets and the Hermans were entitled to judgment as a matter of law.
Since the Hermans satisfied their initial burden under Dresher, supra, Appellant had a reciprocal burden to demonstrate that an issue of fact existed with regard to the formation of a partnership. Id. As the nonmoving party, Appellant "may not rest upon the mere allegations * * * of [her] pleadings." Dresher,75 Ohio St.3d 280, 293. Rather, the nonmoving party must set forth particular facts showing that an issue of fact remains. Id. Appellant has failed to satisfy this burden since she did not file a response to defendants' motion for summary judgment with any specific evidence to the contrary.
We note, however, that even if we were to assume that a partnership had been established, we find that the partnership did not survive Bert Herman's death. R.C. 1775.30(D) states that the death of any partner automatically dissolves the partnership. Appellant's claims did not arise until approximately one week after Bert Herman passed away and thus, one week after the alleged partnership had been terminated by law without any necessity for "winding up" procedures due to the infancy of the business. For the foregoing reasons, we find that the trial court properly granted summary judgment in favor of the Hermans insofar as the decision relates to the claims that were properly argued before the trial court.
We now turn to discuss the decision to grant summary judgment in favor of BENA on all claims asserted: breach of contract, promissory estoppel, unjust enrichment, breach of fiduciary duty, misappropriation of a business opportunity, promissory estoppel, and tortious interference with contract. The first three claims are contract-based while the last four are based in tort. Unlike the previous defendants, BENA specifically argued each of Appellant's claims in its motion for summary judgment and accompanying memorandum.
Without having to analyze each of Appellant's assertions separately, we find that the resolution of the issues surrounding the contract claims depends upon whether Benjamin entered into a binding agreement with Appellant to produce the first few production runs of the mower curtains. Resolution of the tort claims depends upon whether Benjamin intentionally interfered with Samson's contract with AGCO. Based upon the evidence before this court, we hold that there is no issue of fact as to these essential matters.
With respect to the contract-based claims, there is conflicting evidence in the record. Benjamin's affidavit indicates that he only promised to produce the mower curtain prototypes for Samson and that he never promised to assist with the actual production. On the other hand, both Appellant and Steven Herman testified during their depositions that they were under the impression that BENA was going to produce the first few runs of curtains. Nonetheless, despite this controversy, we are convinced that a binding contract does not exist in law or in equity.
More specifically, it appears to this court that Appellant's contract-based claims must fail because Appellant relies on an alleged agreement that is utterly vague in its terms. A contract must be definite and certain in order to be considered binding. R.P. Carbone Constr. Co. v. North Coast Concrete, Inc. (1993),88 Ohio App.3d 505, 508, citing Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations (1991), 61 Ohio St.3d 366, 369. Similarly, for a claim to warrant the application of promissory estoppel, this equitable doctrine requires, inter alia, that the promise must be clear in its terms. Stull v. Combustion Engineering, Inc. (1991), 72 Ohio App.3d 553, 557.
In this case, the testimony is wholly insufficient to find a binding agreement. During their respective depositions, both Appellant and Steven Herman merely stated that they thought BENA would produce the "first few runs" of mower curtains. Even viewing the evidence in a light most favorable to Appellant, it is clear that the parties did not form a valid agreement. Indeed, all material terms are missing. For instance, the quantity of mower curtains was not established; the price for the production was not agreed upon and neither party mentioned a date for delivery. Based upon the foregoing, we cannot find that an issue of fact remains on Appellant's contract-based claims.
Likewise, we are convinced that an issue of fact does not remain with respect to Appellant's tort based claims for disclosure of trade secrets, breach of fiduciary duty, misappropriation of a business opportunity and tortious interference with a contract. The record unequivocally demonstrates that BENA did not intentionally interfere with Appellant's business relationship with AGCO. BENA did not initiate contact or negotiations with AGCO. Rather, William Nungester contacted BENA to produce the mower curtains only after it became obvious that Samson could not fulfill its obligations to AGCO. BENA did nothing to interfere with Appellant's business dealings.
Based upon the foregoing, we find that the decision to grant summary judgment in favor of all defendants was appropriate, insofar as it relates to the issues that were properly brought and argued before the court.
Appellant's first assignment of error is overruled as to BENA and as to the Hermans on the claims of breach of fiduciary duty, misappropriation of a business opportunity and disclosure of trade secrets. The decision to grant summary judgment to the Hermans on Appellant's remaining claims is reversed and remanded for further proceedings.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed in part and reversed in part for further proceedings in accordance with this opinion.
Judgment reversed and cause remanded.
BRYANT, P.J., and HADLEY, J., concur.