ACCEPTED
15-25-00054-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/1/2025 11:14 PM
CHRISTOPHER A. PRINE
CLERK

ORAL ARGUMENT CONDITIONALLY REQUESTED

No. 15-25-00054-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/1/2025 11:14:58 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT
## AUSTIN, TEXAS

**JOHANNES B. MASSAR,**
*Appellant*

v.

**PEGASUS PAIN MANAGEMENT, PLLC,**
*Appellee*

**From Cause No. CC-22-00078-B in the County Court at Law No. 2, Dallas County, Texas, Honorable Melissa Bellan, Presiding**

## APPELLEE'S BRIEF

Mark A. Ticer
State Bar No. 20018900
mticer@ticerlaw.com
Jennifer W. Johnson
State Bar No. 24060029
jjohnson@ticerlaw.com
**LAW OFFICE OF MARK A. TICER**
10440 N. Central Expressway, Suite 600
Dallas, Texas 75231
214-219-4220 – Telephone
214-219-4218 – Facsimile

**ATTORNEYS FOR APPELLEE**

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to *Tex. R. App. P.* 38.2(a), below are the identities of parties and counsel involved in this appeal:

**Appellee:**

Pegasus Pain Management, PLLC

**Counsel for Appellee in the Trial Court and this Court:**

Mark A. Ticer
State Bar No. 20018900
mticer@ticerlaw.com
Jennifer W. Johnson
State Bar No. 24060029
jjohnson@ticerlaw.com
**LAW OFFICE OF MARK A. TICER**
10440 N. Central Expressway, Suite 600
Dallas, Texas 75231
214-219-4220 – Telephone
214-219-4218 – Facsimile

**Appellant:**

Johannes B. Massar

**Counsel for Appellants in the Trial Court and this Court:**

Raymond R. Fernandez, Jr.
State Bar No. 06934275
rfernandez@fernandezllp.com
Robert L. Knebel, Jr.
State Bar No. 11589500
rknebel@fernandezllp.com
**FERNANDEZ LLP**
2515 McKinney Avenue, Suite 920
Dallas, Texas 75201
214-231-2700 – Telephone

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................................ i

TABLE OF CONTENTS ................................................................................................ ii

INDEX OF AUTHORITIES ......................................................................................... iv

STATEMENT OF THE CASE ........................................................................................ 2

STATEMENT REGARDING ORAL ARGUMENT .................................................... 3

STATEMENT OF JURISDICTION .............................................................................. 4

ISSUES PRESENTED .................................................................................................... 5

STATEMENT OF FACTS ............................................................................................. 6

STANDARD OF REVIEW .......................................................................................... 13

SUMMARY OF THE ARGUMENT ............................................................................ 15

ARGUMENTS AND AUTHORITIES ........................................................................ 18

I. MASSAR HAS WAIVED HIS CHALLENGE TO THE JUDGMENT BY INADEQUATE BRIEFING ......................................................................................... 18

   A. The Law .............................................................................................................. 18

   B. Application of the Law to the Facts ................................................................... 19

II. MASSAR BREACHED HIS CONTRACT WITH PEGASUS ........................ 21

   A. Massar's Condition Precedent Argument Fails ................................................. 21

   B. Massar is Legally Accountable for Not Paying Pegasus ................................... 24

   C. Conclusion .......................................................................................................... 29

III. THE TRIAL COURT'S FEBRUARY 21, 2025 JUDGMENT CORRECTLY PROVIDES PEGASUS'S DAMAGES ................................................................... 30

IV. MASSAR'S "MOTION TO INTERPLEAD FUNDS" DID NOT ENTITLE HIM TO DISCHARGE ................................................................................ 32

V. PEGASUS ESTABLISHED ITS ALTERNATE CLAIM FOR PROMISSORY ESTOPPEL AND ENTITLEMENT TO ATTORNEY'S FEES ........................... 36

    A. Promissory Estoppel ..................................................................... 36

    B. Attorney's Fees ............................................................................ 39

CONCLUSION ......................................................................................... 42

CERTIFICATE OF SERVICE .................................................................... 43

CERTIFICATE OF COMPLIANCE ............................................................. 43

# INDEX OF AUTHORITIES

**Cases**

*1/2 Price Checks Cashed v. United Auto Ins. Co.*,
344 S.W.3d 378 (Tex. 2011) ...................................................................................41

*Betty Leavell Rlty. Co. v. Raggio*,
669 S.W.2d 102 (Tex. 1984) ...................................................................................23

*Bloom v. Bloom*,
767 S.W.2d 463 (Tex. App. – San Antonio 1989, writ denied)............................40

*Brigham v. Brigham*,
863 S.W.2d 761 (Tex. App. – Dallas 1993, writ denied)......................................13

*Brown v. Getty Reserve Oil, Inc.*,
626 S.W.2d 810 (Tex. App. – Amarillo 1981, writ dism'd) ................................35

*Browning v. Holloway*,
620 S.W.2d 611 (Tex. 1981) ..................................................................................31

*Chinwah v. Jones*,
No. 05-01-01574, 2002 WL 3139979 (Tex. App. – Dallas Oct. 25, 2002, pet.
denied) ....................................................................................................................31

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) ..................................................................................13

*Collins v. Walker*,
341 S.W.3d 570 (Tex. App. – Houston [14th Dist.] 2011, no pet.) ......................39

*Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys.*,
398 S.W.3d 303 (Tex. App. – Corpus Christi 2012, pet. denied) .........................40

*Dow Chem. Co. v. Francis*,
46 S.W.3d 237 (Tex. 2001) ....................................................................................14

*Fort Worth Transp. Auth. v. Rodriguez*,
547 S.W.3d 830 (Tex. 2018) ..................................................................................34

*Gillum v. Republic Health Corp.*,
778 S.W.2d 558 (Tex. App. – Dallas 1989, no writ) ...........................................39

*Gilmartin v. KVTV-Channel 13*,
985 S.W.2d 553 (Tex. App. – San Antonio 1998, no pet.) ................................39

*Greathouse v. Charter Nat'l Bank-Sw*,
851 S.W.2d 173 (Tex. 1992) .............................................................................23

*Heggy v. American Trading Employee Retirement Acct. Plan*,
123 S.W.3d 770 (Tex. App. – Houston [14th Dist.] 2003, pet. denied) ....... 34, 35

*Huey v. Huey*,
200 S.W.3d 851 (Tex. App. – Dallas 2006, no pet.) ..........................................20

*In re A.E.*,
580 S.W.3d 211 (Tex. App. – Tyler 2019, pet. denied) ......................................20

*In re A.N.G.*,
631 S.W.3d 471 (Tex. App. – El Paso 2021, no pet.) .........................................18

*In re Meador*,
968 S.W.2d 346 (Tex. 1998) (orig. proceeding) ................................................25

*J.C. Gen. Contractors v. Chavez*,
421 S.W.3d 678 (Tex. App. – El Paso 2014, pet. denied) ..................................21

*MedFinManager, LLC v. Salas*,
No. 04-20-00051-CV, 2021 WL 3742681 (Tex. App. – San Antonio Aug. 25,
2021, pet. denied) .............................................................................................41

*Murray v. Crest Constr., Inc.*,
900 S.W.2d 342 (Tex. 1995) .............................................................................31

*N&A Properties, Inc. v. PH Steel, Inc.*,
656 S.W.3d 556 (Tex. App. – El Paso 2022, no pet.) .........................................19

*Perry v. Cohen*,
272 S.W.3d 585 (Tex. 2008) .............................................................................18

*Preload Tech. Inc. v. A.B. & J. Constr. Co. Inc.*,
    696 F.2d 1080 (5th Cir. 1983) ........................................................... 40, 41

*Raym v. Tupelo Management, LLC*,
    No. 02-21-00071-CV, 2022 WL 60722 (Tex. App. – Fort Worth Jan. 6, 2022, no
    pet.) ..............................................................................................................41

*Roberson v. Robinson*,
    768 S.W.2d 280 (Tex. 1989) (per curiam) ..........................................................13

*Ross v. St. Luke's Episcopal Hosp.*,
    462 S.W.3d 496 (Tex. 2015) ..................................................................18

*Royston, Rayzor, Vickery & Williams, LLP v. Lopez*,
    467 S.W.2d 494 (Tex. 2015) ..................................................................25

*San Saba Energy LP v. Crawford*,
    171 S.W.3d 323 (Tex. App. – Houston [14th Dist.] 2005, no pet.) .............. 18, 37

*Shelby Distributions, Inc. v. Reta*,
    441 S.W.3d 715 (Tex. App. – El Paso 2014, no pet.) .........................................20

*Shields Ltd. Partnership v. Bradberry*,
    526 S.W.3d 471 (Tex. 2017) .................................................................. 13, 14

*Sixth RMA Partners, LP v. Sibley*,
    111 S.W.3d 46 (Tex. 2003) ..................................................................13

*St. John Missonary Baptist Church v. Flakes*,
    595 S.W.3d 211 (Tex. 2020) ..................................................................18

*Sw. Bell Media, Inc. v. Lyles*,
    825 S.W.2d 488 (Tex. App. – Houston [1st Dist.] 1992, writ denied) ................13

*Thomas v. Thomas*,
    852 S.W.2d 31 (Tex. App. – Waco 1993, no writ) .............................................13

*Traco, Inc. v. Arrow Glass Co., Inc.*,
    814 S.W.2d 186 (Tex. App. – San Antonio 1991, writ denied)..................... 39, 40

*Trimcos, LLC v. Compass Bank,*
    649 S.W.3d 907 (Tex. App. – Houston [1st Dist.] 2022, pet. denied).......... 18, 37

*Tri-State Pipe & Equip., Inc. v. Southern Cty. Mut. Ins. Co.,*
    8 S.W.3d 394 (Tex. App. – Texarkana 1999, no pet.) ........................................34

*Turner v. NJN Cotton Co.,*
    485 S.W.3d 513 (Tex. App. – Eastland 2015, pet. denied).................................40

*Valadez v. Avitia,*
    238 S.W.3d 843 (Tex. App. – El Paso 2007, no pet.) ............................ 18, 20, 21

*Young v. Gumfory,*
    322 S.W.3d 731 (Tex. App. – Dallas 2010, no pet.)............................................34

**Statutes**
*Tex. Civ. Prac. & Rem. Code* § 38.005....................................................................40

**Other Authorities**
Texas Ethics Opinion 681 (2018) ..................................................................... passim

*Tex. Discpl. R. of Prof'l Conduct* 1.14(c) ..............................................................25

**Rules**
*Tex. R. Civ. P.* 54 ...................................................................................... 15, 21

# IN THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT
## AUSTIN, TEXAS

### JOHANNES B. MASSAR,
*Appellant*

**v.**

### PEGASUS PAIN MANAGEMENT, PLLC,
*Appellee*

TO THE HONORABLE JUSTICES OF THE FIFTEENTH DISTRICT COURT OF APPEALS:

Pegasus Pain Management, PLLC (hereinafter "Pegasus" or "Appellee"), Appellee herein, files *Appellee's Brief* and would show this Honorable Court the following:

## STATEMENT OF THE CASE

**Nature of the Underlying Proceeding:** Pegasus sued Ronald Paulson ("Paulson") and Johannes B. Massar ("Massar") for unpaid medical services provided to Paulson resulting from an automobile accident. Pegasus's claims against Massar and Paulson include breach of contract, fraud, conversion, promissory estoppel, money had and received, conspiracy and for attorney's fees.

**Trial Court:** Cause No. CC-22-00078-B in the County Court at Law No. 2, Dallas County, Texas, Honorable Melissa Bellan, Presiding.

**Disposition of the Case:** On February 21, 2025, a judgment was entered against Massar and Paulson for $15,990 for breach of contract and attorney's fees of $30,000 plus conditional fees in the event of an unsuccessful appeal. Alternatively, Pegasus obtained a judgment for $8,000 against Massar based on promissory estoppel plus attorney's fees.

## STATEMENT REGARDING ORAL ARGUMENT

To the extent this Honorable Court believes oral argument will aid its determination of this appeal and/or grants Appellant oral argument, Appellee also requests oral argument pursuant to *Tex. R. App. P.* 39.7. However, if the Court believes Massar has waived his complaints based on inadequate briefing, then no oral argument is necessary.

## STATEMENT OF JURISDICTION

This Honorable Court has jurisdiction over this appeal pursuant to Section 22.220(a) of the Texas Government Code.

# ISSUES PRESENTED

1. Has Massar waived all of his complaints to the February 21, 2025 judgment because of inadequate briefing?

2. Did Massar breach his contract with Pegasus?

3. Did the trial court correctly award damages in the February 21, 2025 judgment?

4. Did Massar's "Motion to Interplead Funds" entitle him to discharge and release?

5. Did Pegasus establish its alternate claim for promissory estoppel and attorney's fees from this cause of action?

# STATEMENT OF FACTS

Paulson was injured in an automobile accident on October 10, 2017 and retained Massar to represent him. RR Vol. 4, at Plaintiff's Ex. 10. As part of securing medical services for Paulson, Massar requested Pegasus to treat Paulson and sent Pegasus a letter of protection ("LOP") which stated:

> Ronald Paulson has retained this law firm for representation regarding his personal injuries sustained in the above-referenced automobile collision.
>
> Per your request, this letter shall serve as our "letter of protection" when and if insurance proceeds are forthcoming via our office as the result of a settlement or other conclusion of a third-party liability claim on behalf of my client. We will protect payment of medical services for all reasonable and necessary expenses rendered by you related to the subject collision and causation of his injuries, out of the proceeds, if any, of my client's personal injury case after deduction of litigation expenses and attorney's fees.
>
> The above is contingent upon your facility providing me with the following medical documentation:
>
> > 1. Daily treatment note;
> > 2. X-ray reports if x-rays are taken;
> > 3. Initial, interim and final narrative reports; and
> > 4. Itemized statement for services rendered.
>
> If you have any questions regarding the above, please do not hesitate to contact me.

RR Vol. 4, at Plaintiff's Ex. 10; RR Vol. 2, p. 94.

Pegasus provided treatment to Paulson based on the LOP totaling $15,990. RR Vol. 4, at Plaintiff's Ex. 3; RR Vol. 2, pp. 48-55. This treatment included trigger point injections. RR Vol. 4, at Plaintiff's Ex. 6, 15; RR Vol. 2, p. 120.

In accordance with the LOP, Pegasus furnished Massar with Paulson's treatment records, narratives, x-rays and reports, and an itemized statement. RR Vol. 2, pp. 118-119, 124-125. Massar used Pegasus's records, treatment, and billings for two demands for settlement. RR Vol. 2, pp. 116-119. In using and relying on these materials, Massar represented that Pegasus had provided Paulson the treatment described in the Pegasus records and the treatment and charges were reasonable and necessary. RR Vol. 2, pp. 118-119, 123.

According to Massar, he went over Pegasus' records and billings thoroughly with Paulson before making any demands. RR Vol. 2, pp. 96-98, 119-121, 135. Massar used, relied on, and provided the Pegasus records to the insurers involved in Paulson's claims, obtaining two settlements for Paulson – $30,000 from the liability insurer and $25,000 from the underinsured ("UIM") carrier. RR Vol. 2, pp. 116-119, 123.

Unbeknownst to Pegasus, in February 2019, Massar settled the liability lawsuit for $30,000 and received the settlement funds in March 2019. RR Vol. 4, p. 86.

In August 2020, Massar obtained a $25,000 settlement for Paulson's UIM claim. RR Vol. 4, Plaintiff's Ex. 53. Once again, Massar did not inform Pegasus of this settlement or pay Pegasus in accordance with the LOP. RR Vol. 2, pp. 144-145.

On December 2, 2020, Massar contacted Pegasus seeking a reduction of Pegasus's bill from $15,990 to $8,000, claiming that the amount of the bills for all medical providers was $46,000, which was more than the liability settlement. RR Vol. 4, at Plaintiff's Ex. 16. Massar did not disclose that he had settled both claims more than a year before, and that he had paid himself and Bruce Carlson out of these settlements. RR Vol. 2, pp. 86, 144-145. Nor did Massar disclose that, according to Massar, a dispute existed over Pegasus's bill. RR Vol. 2, pp. 165-168, 170. Based on Massar's representations and no conditions being imposed on payment, Pegasus agreed to accept the $8,000 with the understanding that this amount would be promptly paid in light of the settlement Pegasus was told had occurred. RR Vol. 4, at Plaintiff's Ex. 16; RR Vol. 2, pp. 85-87.

When Pegasus did not receive payment within several months, it contacted Massar but was met with silence. RR Vol. 2, p. 87; RR Vol. 4, Plaintiff's Exs. 38, 55. Ultimately, Pegasus hired counsel in October 2021 to pursue collection and counsel advised Massar that Pegasus was filing suit. RR Vol. 4, at Plaintiff's Ex. 38. Massar eventually responded, claiming that no payment would be made because of a purported dispute over Pegasus's bill regarding whether a particular procedure was

performed. RR Vol. 4, at Plaintiff's Ex. 40. Massar, however, provided no explanation why he sought and obtained a reduction of Pegasus's bill without any conditions, used Pegasus's bills, records, and treatment to obtain the settlement disclosed to Pegasus, and why no disclosure was made before seeking any reduction. RR Vol. 4, at Plaintiff's Ex. 40.

On January 7, 2022, Pegasus filed suit against Massar and Paulson for breach of contract, fraud, conversion, promissory estoppel, money had and received, and conspiracy. CR 4-10. Both Massar and Paulson answered *pro se.* CR 83. Prior to Paulson's answer, he sent a letter to Pegasus's counsel advising that he had previously instructed Massar to pay Pegasus. RR Vol. 4, at Plaintiff's Ex. 37.

Following the depositions of Paulson on May 20, 2022 and Massar on August 17, 2022, Massar filed a request to interplead $8,000 on December 23, 2022. CR 12-15. Massar eventually set a hearing on his interpleader for April 5, 2023. CR 85. The trial court ruled that Massar could interplead $8,000 but it refused to discharge Massar from liability. CR 17. Massar did not file any motion for summary judgment or similar motion requesting discharge. CR 82-89.

On November 21, 2024, the case was called to trial. RR Vols. 2, 3, 4. The trial consisted of five witnesses – Cody Hambrick, the nurse anesthesiologist who handled anesthesia for Paulson's interventional procedure, Dr. Michael Ellman, the

principal of Pegasus, Massar, Paulson, and Mark Ticer, Pegasus's counsel (regarding attorney's fees). RR Vol. 1, p. 3.

The trial lasted two days. RR Vols. 2, 3, 4. At trial, the evidence revealed that: Massar's failed to effectively and timely communicate with Paulson; that Paulson instructed Massar to pay Pegasus; that Paulson instructed Massar not to pay American Chiropractic but Massar disregarded Paulson's instructions and paid anyway; that Massar had not timely accounted for both settlements and had not paid Paulson amounts owed to him; that Massar had paid himself fees despite disputes, uncertainty, and promises to pay providers; and that Massar was aware of the so-called dispute over Pegasus's bills before seeking the reduction from Pegasus but still sought and obtained a reduction of Pegasus's bills to $8,000 anyway. RR Vol. 2, pp. 116-119, 123-125, 135-136, 140, 144-145, 158, 165-167, 170, 178-180, 183-184; RR Vol. 3, pp. 11-12, 14, 56, 58-59, 62, 75, 79, 81-82, 84. During the trial, the trial court noted that Massar's explanations and testimony were not credible. RR Vol. 2, pp. 163, 191, 193,195, 215, 221-222, 227-228; RR Vol. 3, pp. 97, 105, 111, 113-114.

Paulson's testimony reflected Massar's refusal to provide effective, timely, and material communications to Paulson regarding Paulson's case and failed to pay Pegasus at Paulson's instruction. RR Vol. 3, pp. 56, 58-59, 62, 75, 79, 81-82, 84, 98.

Following the testimony of Massar and Paulson, Ticer was prepared to testify as to reasonable attorney's fees. RR Vol. 3, pp. 100-105. However, a stipulation was made regarding Pegasus's attorney's fees through trial at $30,000 and conditional fees in the following amounts: $10,000 if Plaintiff prevails in any appeal to the court of appeals, $3,000 if a motion for rehearing is required and Plaintiff files such motion or a response thereto, $8,000 if a petition for review is filed by Plaintiff or Plaintiff must respond to a petition for review, $10,000 if full briefing is required, $2,500 if oral argument is ordered, and $25,000 if a motion for rehearing is filed by Plaintiff or Plaintiff must respond to such motion. RR Vol. 3, p. 97.

Following post-trial motions, on February 21, 2025, the trial court entered a modified final judgment:

> Came to be heard on the 7th day of February 2025, *Plaintiff's Motion to Modify December 3, 2024 Judgment* and *Defendant Johannes B. Massar's Motion for New Trial*, and the Court, after reviewing these two motions and responses thereto, and hearing the arguments of counsel, rules as follows:
>
> Plaintiff shall recover on its breach of contract claim against the Defendants, jointly and severally, in the sum of $15,990;
>
> Alternatively, Plaintiff shall recover from Defendant Johannes B. Massar on its promissory estoppel claim in the amount of $8,000; and In rendering this judgment to Plaintiff on the above causes of action, Plaintiff may only recover once and not for each cause of action.
>
> Based on the stipulation between the parties regarding the amount of attorney's fees, Plaintiff is also awarded its reasonable attorney's fees in the amount of $30,000 for both its breach of contract claim and promissory estoppel claim. If Plaintiff prevails in any appeal to the

court of appeals, Plaintiff is entitled to conditional fees in the amount of $10,000. If a motion for rehearing is required and Plaintiff files such motion or a response thereto, Plaintiff is entitled to an additional $3,000 in attorney's fees. The following conditional fees are awarded if Plaintiff prevails in the petition for view process: if a petition for review is filed by Plaintiff or Plaintiff must respond to a petition for review, the sum of $8,000; if full briefing is required, the sum of $10,000; if oral argument is ordered, the sum of $2,500; and if a motion for rehearing is filed by Plaintiff or Plaintiff must respond to such motion, the sum of $2,500. Plaintiff may recover its attorney's fees once and not based on each of Plaintiff's claims.

Plaintiff shall recover pre-judgment interest in the amount of $4,292.98 and post-judgment at the rate of 8%. Plaintiff shall also recover its costs of court.

This judgment disposes of all claims and all parties and is a final and appealable judgment.

CR 67-68.

Massar filed his notice of appeal on February 28, 2025. CR 76-77. Paulson did not appeal.

## STANDARD OF REVIEW

In a nonjury trial, the trial court is the exclusive judge of the credibility of any witnesses and the weight given to any evidence. *Sw. Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex. App. – Houston [1st Dist.] 1992, writ denied); *Thomas v. Thomas*, 852 S.W.2d 31, 34 (Tex. App. – Waco 1993, no writ). The trial court is likewise the sole judge of the facts proved and any reasonable inferences drawn from the facts. *Brigham v. Brigham*, 863 S.W.2d 761, 762-63 (Tex. App. – Dallas 1993, writ denied).

In a nonjury trial when no party requests findings of fact and conclusions of law, "all fact findings necessary to support the trial court's judgment are implied." *Shields Ltd. Partnership v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017); *Sixth RMA Partners, LP v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). If a reporter's record is filed for an appeal, implied findings may be challenged on factual and legal insufficiency grounds in the same manner "as jury findings or a trial court's [express] findings of fact . . ." *Bradberry*, 526 S.W.3d at 480, citing *Sibley*, 111 S.W.3d at 56; *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam).

In a legal sufficiency challenge, the appellate court must determine whether the evidence presented would enable reasonable and fair-minded people to reach the verdict being reviewed. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). The review of the evidence must be in the light most favorable to the verdict,

crediting any favorable evidence, and crediting any favorable evidence if a reasonable factfinder could disregard any contrary evidence unless a reasonable factfinder could not. *Id.* at 821-22, 827. A legal sufficiency challenge may only be sustained when: (1) the record discloses a complete absence of a vital fact; (2) the reviewing court is barred by rules of evidence or law from giving weight to the only evidence offered for proof of a vital fact; (3) the only evidence for proof of a vital fact is no more than a scintilla; or (4) the evidence conclusively demonstrates the opposite of a vital fact. *Id.* at 810; *see also Bradberry*, 526 S.W.3d at 480.

For a factual sufficiency challenge, the appellate court must consider and weigh all of the evidence and decide whether the evidence in support of a finding is so weak as to be clearly wrong or unjust or whether the finding is so against the great weight and preponderance of the evidence to be clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

## SUMMARY OF THE ARGUMENT

Massar has waived all of his complaints regarding the February 21, 2025 judgment by not only failing to identify any standard of review, but not providing analysis for all applicable standards of review. Massar merely offers four general issues but wholly fails to analyze and discuss any of his issues in terms of any applicable standard of review for this Court to evaluate and Pegasus to respond. Massar's inadequate briefing results in waiver and therefore this Court should affirm the trial court's judgment.

Even assuming no waiver, Massar's reliance on any condition precedent as a defense to Pegasus's breach of contract claim fails legally and factually. Massar did not put any condition precedent in issue, as he did not deny the satisfaction of all conditions precedent as pled by Pegasus in accordance with *Tex. R. Civ. P.* 54. Therefore, the satisfaction of any conditions precedent are deemed admitted.

Moreover, factually, Massar admitted compliance with any purported conditions precedent. Massar identifies the furnishing of Paulson's treatment records, narratives, x-rays and reports, and an itemized statement of services in the LOP as conditions precedent to payment under the LOP, but admits these items were timely provided to him. In fact, he used these items to obtain two settlements for Paulson.

Massar's conditions precedent defense fails.

Massar's reliance on an ethical opinion and blaming Paulson as a defense to breach of contract equally fails. Even if Texas Ethics Opinion 681 is applied, Massar acted materially inconsistent with its advice. Further, blaming Paulson is also a nonstarter given Paulson's repeated instructions for Massar to pay Pegasus.

Massar's effort to limit breach of contract damages, whether legally or factually, to $8,000 is without merit. When Massar failed to honor his promise to pay Pegasus $8,000 to settle Paulson's balance, Pegasus was entitled to sue and recover the full amount.

Massar's interpleader defense is meritless, whether legally or factually. The trial court properly rejected Massar's attempt to be discharged and released from liability through interpleader and the trial demonstrated all the reasons why Massar had not satisfied all interpleader elements including that Massar was not an innocent stakeholder and that he unreasonably delayed seeking an interpleader.

Lastly, Massar's conclusory contention that Pegasus may not recover on its promissory estoppel claim with attorney's fees is inadequately briefed and waived. Even if not waived, Pegasus proved its promissory estoppel claim with regard to Massar's refusal to honor his promise to pay Pegasus $8,000 to settle Paulson's bill for treatment.

In addition, Massar's two sentence declaration that Pegasus may not recover attorney's fees for its promissory estoppel claim is discredited by Texas and federal

authority including a recent Texas Supreme Court opinion. Massar relies on a single court of appeals opinion not relied on by other courts and is betrayed by more recent opinions including by the Texas Supreme Court.

Because there is no merit to any of Massar's complaints, if not waived, the February 21, 2025 judgment should be affirmed.

## ARGUMENTS AND AUTHORITIES

## I. MASSAR HAS WAIVED HIS CHALLENGE TO THE JUDGMENT BY INADEQUATE BRIEFING

### A. The Law

*Tex. R. App. P.* 38.1(i) requires an appellate brief to contain "clear and concise legal argument for the contentions made, with appropriate citations to authorities and to the record." *In re A.N.G.*, 631 S.W.3d 471, 476 (Tex. App. – El Paso 2021, no pet.). The "failure to cite legal authority or provide substantive analysis of the legal issue presented result[s] in waiver of the complaint." *Valadez v. Avitia*, 238 S.W.3d 843, 843 (Tex. App. – El Paso 2007, no pet.).

Briefing must be construed "reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). Appellate courts should hesitate to resolve appeals on waiver and instead attempt to resolve cases on the merits. *St. John Missonary Baptist Church v. Flakes*, 595 S.W.3d 211, 213-14 (Tex. 2020). Nevertheless, "[a] failure to provide substantive analysis of an issue or cite appropriate authority waives a complaint on appeal." *Trimcos, LLC v. Compass Bank*, 649 S.W.3d 907, 921 (Tex. App. – Houston [1st Dist.] 2022, pet. denied); *see also Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015). " . . . [A] party asserting error on appeal must still put forth some specific argument and analysis showing that the record and the law support" the appellant's contentions. *San Saba Energy LP v. Crawford*, 171 S.W.3d 323, 338

(Tex. App. – Houston [14th Dist.] 2005, no pet.).

## B. Application of the Law to the Facts

Massar does not articulate any legal or factual sufficiency challenge to specific points or even the judgment overall. Massar's brief does not mention the standards for legal or factual insufficiency or any other appellate standard that he relies on. Massar provides four purported issues but does not identify any standard of review that applies. Massar does not offer any analysis for any standard of review that applies to the record for this Court to review and, equally important, for Pegasus to address in its brief on the merits.

Specifically, Massar's brief lists the following "issues" in his Argument section:

1. Did Massar breach a contract with Pegasus?

2. Did the trial court award the correct damages?

3. Did the interpleader of the IOLTA funds discharge Massar? and

4. Is there evidence to support a judgment for promissory estoppel?

Yet nowhere does Massar identify any standard of review for any of his "issues"; with no standard identified as well as no analysis relating to any standard of review, Massar has not satisfied Rule 38.1(i), demonstrating inadequate briefing and waiver of each of his issues. *N&A Properties, Inc. v. PH Steel, Inc.*, 656 S.W.3d 556, 570 (Tex. App. – El Paso 2022, no pet.) (failure to address the proper standard of review

and applicable law for factual sufficiency challenge presented nothing for review); *Shelby Distributions, Inc. v. Reta*, 441 S.W.3d 715, 722-23 (Tex. App. – El Paso 2014, no pet.) (failure to set out appropriate standard of review for legal and factual sufficiency, to explain how the evidence is legally and factually insufficient, and analyze the evidence in terms of legal and factual sufficiency constitutes inadequate briefing and waiver of the issues).

Without any standard of review provided along with any specific analysis based on a particular standard of review, this Court cannot properly evaluate and decide Massar's issues and Pegasus cannot effectively respond to Massar's complaints. Pegasus is left to guess or speculate on what standard or basis Massar is relying on – it is legal or factual insufficiency, something else, or nothing at all? Furthermore, what standard of review is Massar using in asking this Court to reverse or vacate the February 21, 2025 judgment?

This Court may not fill in the blanks and/or hypothesize on what standard might apply or infer Massar's reasoning, arguments, or analysis. *In re A.E.*, 580 S.W.3d 211, 219 (Tex. App. – Tyler 2019, pet. denied); *Valadez*, 238 S.W.3d at 845; *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App. – Dallas 2006, no pet.). An appellate court cannot be tasked with crafting or making a party's argument and analysis, identifying error, searching through the record for facts that support error, or conducting legal research to support a party's contentions; expecting an appellate

court to do so would require the court to become an advocate rather than a neutral decisionmaker. *J.C. Gen. Contractors v. Chavez*, 421 S.W.3d 678, 681 (Tex. App. – El Paso 2014, pet. denied); *Valadez*, 238 S.W.3d at 845.

Accordingly, Massar's "issues" present nothing for review due to inadequate briefing and the judgment of the trial court should be affirmed.

## II. MASSAR BREACHED HIS CONTRACT WITH PEGASUS

Without providing any standard of review or analysis based on any standard, Massar generally claims that he did not breach the LOP made with Pegasus, claiming the existence of an unsatisfied condition precedent. Massar also contends that he is excused from performance of the LOP based on a single ethics opinion. The trial court, as the sole judgment of credibility, rejected Massar's excuses and with good reason; Massar's conduct, version of events, and his own testimony discredit Massar's effort to wiggle out of liability and reflect Massar's absence of candor.

### A. Massar's Condition Precedent Argument Fails

Massar argues that he had no obligation to pay because Pegasus was obligated to provide Massar with Paulson's daily treatment notes, x-ray reports if x-rays were taken, narratives, and an itemized statement for services as a condition precedent to payment. *Appellant's Brief*, p. 22. However, Massar did not plead the failure of any condition precedent as a defense nor deny the averment in Pegasus's petition that Pegasus complied with all conditions precedent in accordance with *Tex. R. Civ. P.*

54. CR 18-23. Massar also did not plead any ethics opinion or similar as an affirmative defense. CR 18-23.

The following facts are uncontroverted: (1) Massar issued an LOP to Pegasus that provided that Massar would pay Pegasus out of the settlement proceeds for its services for treating Paulson; (2) Massar used the bills, records, and treatment from Pegasus to obtain at least two settlements on behalf of Paulson of which Massar received a contingency fee of one third of the two settlements; (3) Massar obtained a $30,000 settlement from the liability insurer and $25,000 from the UIM carrier; (4) these settlements took place in February 2019 and August 2020 respectively but Massar did not inform Pegasus of either settlement in any timely manner; (5) on December 2, 2020, Massar contacted Pegasus to obtain a reduction of Pegasus's bill to $8,000 which Pegasus agreed to; (6) Pegasus was unaware that Massar had settled the liability case almost two years before, paid himself, and paid Bruce Carlson $10,000 out of the settlements without disclosing same to Pegasus; (7) Massar did not inform Pegasus at the time that he requested a reduction that Paulson disputed treatment that he received from Pegasus; (8) despite the promise to pay Pegasus $8,000 in satisfaction of Paulson's bill, Massar did not pay Pegasus; (9) when Massar did not pay Pegasus, it contacted Massar repeatedly without any response by Massar; (10) only when Pegasus retained counsel and demanded payment did Massar disclose that he was refusing to pay Pegasus because Paulson disputed

Pegasus's bill; and (11) Pegasus sued Massar and Paulson for the unpaid balance of $15,990. RR Vol. 2, pp. 85-89, 116-120, 123-125, 140, 142, 144-145, 153, 158, 163, 165-167, 170, 178-180, 183-184, 187, 190-193, 195, 212, 215, 221-222, 227-228; RR Vol. 3, pp, 11-12, 14, 52, 56, 58-59, 62, 75, 79, 81-82, 84, 98, 111, 113-114, 115.

Because Massar did not plead any failure of conditions precedent as a defense and did not deny Pegasus's pleading of compliance with conditions precedent pursuant to Rule 54, no conditions precedent existed as a defense to payment. *Greathouse v. Charter Nat'l Bank-Sw*, 851 S.W.2d 173, 174 (Tex. 1992); *Betty Leavell Rlty. Co. v. Raggio*, 669 S.W.2d 102, 104 (Tex. 1984) (only by specifically denying plaintiff's Rule 54 allegations is the plaintiff compelled to prove that conditions precedent were satisfied). By not specifically identifying and denying all conditions precedent have not occurred, Massar admitted all conditions precedent had been satisfied. *Greathouse*, 851 S.W.2d at 177.

Equally significant, Massar admitted that he received and used Paulson's records, treatment, narratives, x-rays and x-ray reports, and itemized statement from Pegasus to obtain two settlements and that in doing so, he was warranting and representing that Pegasus furnished reasonable and necessary services to Paulson and that Paulson received the benefit of Pegasus's treatment. RR Vol. 2, pp. 118-120, 123-125. In simple terms, Massar admitted that he received the items identified

in the LOP, thereby satisfying any purported conditions precedent. RR Vol. 2, pp. 124-125. Moreover, Massar did not complain that he did not receive Paulson's records, bills, or otherwise at any time; in fact, he successfully used what Pegasus provided to obtain two settlements totaling $55,000. RR Vol. 2, pp. 116-120, 123.

Even assuming conditions precedent existed[1], Massar's argument that conditions in the LOP were not fulfilled is both waived and meritless; Massar has no conditions precedent defense to Pegasus's breach of contract claim because he did not properly put the matter in issue and Massar admits he received all items referenced in the LOP and even used Pegasus's bills, records, and treatment to obtain the two settlements.

Massar is not excused from complying with the LOP and breached same, entitling Pegasus to the recovery of $15,990.

## B. Massar Is Legally Accountable for Not Paying Pegasus

Massar tries to blame Paulson for not paying Pegasus and also seeks refuge in a Texas Ethics Opinion as a defense for refusing to honor the LOP (as well as the reduction requested that he personally promised). These excuses are without merit.

While Massar relies on Texas Ethics Opinion 681 (2018) for not paying Pegasus, he did not abide by it, assuming it applied at all. Furthermore, Opinion 681

---

[1] Whether the items in the LOP are conditions precedent at all is not proven by Massar. Regardless, even if they could be, Massar's inadequately briefed complaint still fails.

is distinguishable from the fiasco created by Massar.

Initially, as courts have repeatedly held, the Texas Disciplinary Rules of Professional Conduct and Texas Ethics Opinion are not binding statements of law which courts are bound to apply in civil litigation. *In re Meador*, 968 S.W.2d 346, 350 (Tex. 1998) (orig. proceeding). These rules and opinions are merely guidelines and advisory, not controlling rules or standards. *Id.* Ethics opinions carry even less weight than the Texas Disciplinary Rules which are not substantive law. *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.2d 494, 503 (Tex. 2015). Thus, neither the disciplinary rules nor Opinion 681 were binding on the trial court for deciding Pegasus's lawsuit and given the circumstances presented, it is easy to see why.

Opinion 681 states that upon receipt of funds of which a third party has an interest, the lawyer shall promptly notify the third party. Op. 681, at *2; *Tex. Discpl. R. of Prof'l Conduct* 1.14(c). Massar not only failed to promptly notify Pegasus of the settlement funds, but he waited nearly eighteen (18) months to do so; Massar sought and was given a reduction, and then went dark for nearly a year – only rearing his head when Pegasus retained counsel and made demand for payment. RR Vol. 4, Defendant's Ex. 2, Plaintiff's Ex. 38, 40.

The following chronology discredits Massar from relying on Opinion 681:

02/15/2019 – Settlement of Paulson's liability claim and Paulson signs a

settlement statement agreeing to the amounts of medical bills including Pegasus's $15,990 bill;

03/02/2019 – Liability settlement funds are disbursed;

09/29/2020 – Massar receives $25,000 for settlement of Paulson's UIM claim;

09/29/2020 – Massar pays Bruce Carlson $10,000;

12/02/2020 – Massar requests a reduction of Paulson's balance at Pegasus from $15,990 to $8,000;

12/02/2020 – Pegasus agrees to the reduction;

12/03/2020 – Massar acknowledges receipt of Pegasus's agreement to reduce Paulson's bill to $8,000;

02/11/2021 – Pegasus contacts Massar for payment;

07/27/2021 – Massar pays Paulson $1,000;

10/04/2021 – Pegasus contacts Massar for payment;

10/18/2021 – Pegasus contacts Massar for payment;

10/22/2021 – Pegasus's counsel makes demand on Massar for payment;

10/25/2021 – Massar pays three medical providers solely out of Massar's preference;

01/07/2022 – Pegasus files suit against Massar and Paulson;

01/18/2022 – Paulson sends a letter to Pegasus's counsel noting that Paulson had told Massar to pay Pegasus and that he has had repeated

and consistent problems with Massar failing to communicate with Paulson;

01/27/2022 – Massar files his answer;

02/08/2022 – Paulson files his answer;

04/04/2022 – Massar pays American Chiropractic $4,000 despite Paulson telling Massar not to pay this provider;

05/26/2022 – Massar pays Preferred Imaging $1,600;

07/21/2022 – Trial court signs an order granting Pegasus's motion to compel;

12/23/2022 – Massar files his interpleader motion;

04/15/2023 – A hearing is held on Massar's request for interpleader;

05/07/2023 – Trial court signs an order only permitting Massar to deposit $8,000 in the court's registry and denies Massar all other relief;

11/21-22/2024 – Trial takes place;

12/03/2024 – Final judgment signed;

02/21/2025 – Modified final judgment signed; and

02/28/2025 – Massar files his notice of appeal.

Massar disregarded the very advice provided in Opinion 681 by waiting years to notify Pegasus that he was in possession of settlement funds, sought and received a reduction of the Pegasus charges without informing Pegasus that a dispute existed over Pegasus's bill, paid certain providers to the exclusion of Pegasus despite

Pegasus having the largest bill, went silent when inquiry was made about payment following the reduction, was sued by Pegasus for its unpaid bill, waited nearly a year after being sued to file an interpleader, and eventually requested and obtained a hearing on his interpleader nearly fourteen (14) months after suit was filed. Massar's conduct is contradictory to Opinion 681.

In addition, Massar's erratic and inconsistent treatment of Pegasus cannot be squared with Opinion 681 and any ethical dilemma. Any dilemma was self-inflicted by Massar holding onto the settlement funds for years, failing to notify Pegasus timely, making a promise to pay Pegasus $8,000 with no contingencies and failing to honor his promise, avoiding Pegasus until Pegasus made demand through counsel, waiting over a year after being sued to request interpleader, and delaying months before obtaining a hearing on interpleader.

Even assuming Opinion 681 applied and was somehow binding, Massar disregarded its advice.

Additionally, Massar may not blame Paulson for his predicament. First, on March 29, 2019, Paulson signed a settlement statement acknowledging the Pegasus balance was $15,990. RR Vol. 4, Plaintiff's Ex. 36. Second, Massar claimed that he went over Pegasus's bill and treatment records with Paulson before making any settlement demands; thus, any dispute over Pegasus's bill would have come to light. RR Vol. 2, p. 135. Third, Massar repeatedly failed to communicate with Paulson.

RR Vol. 3, pp. 56, 59, 82. Fourth, Massar used Pegasus's bill for services, records, and treatment to obtain two settlements totaling $55,000. RR Vol. 2, pp. 116-119. Fifth, Massar sought and obtained a reduction of $8,000 for Pegasus's charges, thereby ratifying Pegasus's bill. RR Vol. 4, Plaintiff's Ex. 16. Sixth, Paulson instructed Massar to pay Pegasus prior to and after the lawsuit was filed. RR Vol. 4, Plaintiff's Ex. 37; RR Vol. 3, pp. 59, 62, 75, 79, 81-82, 84, 98.

Massar's credibility was definitely at stake in trying to blame Paulson and/or using ethical constraints for his refusal to pay Pegasus. But Massar failed the credibility test repeatedly and he has no one to blame but himself. RR Vol. 2, p. 163; RR Vol. 3, pp, 105, 111, 113-115. Massar did everything wrong starting with his failure to effectively communicate with Paulson, holding onto the settlement funds without disclosing same to Pegasus, seeking a reduction of Pegasus's bill knowing a dispute existed over the services it provided, refusing to pay Pegasus despite Paulson's instructions to do so, and asking for interpleader years after the settlement and promising to pay Pegasus $8,000.

Neither Paulson nor Opinion 681 prevented Massar from paying Pegasus and he may not scapegoat his own client or hide behind Opinion 681.

## C. Conclusion

Massar did not plead any condition precedent as a defense or put the issue in controversy pursuant to Rule 54. Massar is bound by the LOP, is not excused from

performance by Opinion 681 or blaming Paulson. The evidence establishes that Massar breached the LOP, entitling Pegasus to the $15,990 damages awarded in the judgment.

## III. THE TRIAL COURT'S FEBRUARY 21, 2025 JUDGMENT CORRECTLY PROVIDES PEGASUS'S DAMAGES

Massar argues that Pegasus's damages for breach of contract are limited to $8,000 based on his refusal to honor his promise to Pegasus. Massar insists that he should get the benefit of his false promise given under false pretenses, including failing to inform Pegasus that: (1) he had the settlement funds for over a year before ever contacting Pegasus about a reduction; (2) he was aware that Paulson disputed the Pegasus bill; (3) he obtained a second settlement for $25,000 and the settlement funds available totaled $55,000, not $30,000; (4) he used the Pegasus bill, records, and treatment to obtain the two settlements totaling $55,000; and (5) he planned and did make preferential payments to certain medical providers to the exclusion of Pegasus despite Pegasus having the largest bill of all of Paulson's medical providers. Massar does not get the benefit of his false promise.

Consistent with his failure to adequately brief his complaints, Massar spends just over a page on this issue, providing a general overview of damages for breach of contract but zero authority for why damages should be limited to $8,000. Massar's argument is conclusory, resulting in this point of error being waived because of

inadequate briefing. Had Massar bothered to fully analyze his contention with legal authority applied to the facts, he would be forced to admit his generic argument is meritless, if not frivolous.

Tellingly, well-settled Texas law provides that Massar's refusal to honor the reduction request allows Pegasus to seek and recover the full amount of charges. *Browning v. Holloway*, 620 S.W.2d 611, 616-17 (Tex. 1981) (breach of settlement agreement entitles nonbreaching party to sue on original contract); *Chinwah v. Jones*, No. 05-01-01574, 2002 WL 3139979, at *1-2 (Tex. App. – Dallas Oct. 25, 2002, pet. denied) (nonbreaching party may pursue alternate theories of recovery including breach of the original contract and breach of the settlement agreement and elect the remedy following the verdict); *see also Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 345 (Tex. 1995) ("Crest's breach of the settlement agreement allowed Murray to pursue a breach of contract claim on the settlement agreement or to reassert its original claims."). Given Massar's deception in seeking a reduction, this long standing principle makes logical and legal sense as no party should be able to get the other party to take less than owed, refuse to pay, and then claim entitlement to the reduction when sued.

When Massar obtained the reduction by deception and repudiated his promise to pay, Pegasus was entitled to recover the original amount. *Browning*, 620 S.W.2d at 616-17; *Chinwah*, 2002 WL 3139979, at *1-2. Massar provides no authority or

basis to the contrary. The award of $15,990 to Pegasus is fully supported by the record and by Texas law.

## IV. MASSAR'S "MOTION TO INTERPLEAD FUNDS" DID NOT ENTITLE HIM TO DISCHARGE

Massar's exit strategy includes his claim that his interpleader motion discharged him from liability. It is noteworthy that neither the clerk's record nor the docket sheet reflects that Massar ever interpled any funds. CR 1-2, 82-89.[2]

But setting aside this issue, the trial court's May 7, 2023 order was unambiguous – Massar could deposit the $8,000 but his request for release and discharge from liability to Pegasus was denied: "All other relief requested in the Motion is denied." CR 17. Obviously and logically, had Massar been granted release and discharge, there would have been no trial and judgment against Massar. Indeed, the trial court, by proceeding to trial and noting Massar caused the fiasco of the lawsuit, made it clear that Massar was not discharged from liability and damages.

Despite the May 7th order rejecting discharge and release, Massar argues that interpleading $8,000 entitles him to discharge and release. *See Brief of Appellant*, pp. 30-31. Notably, none of Massar's cited authorities back up his contention, especially when the trial court expressly rejected discharge and release as it did by

---

[2] Defendant's Ex. 7 reflects an $8,000 check payable to Dallas County dated 6/2/2023 which was cashed. However, this check is dated nearly one month after the trial court's May 7, 2023 order and nowhere in the record does it reflect the deposit of $8,000 into the court's registry for this case.

granting Pegasus judgment and issuing the May 7th order.

Massar was not entitled to release and discharge with good reason. The trial court more than once pointed out that the entire fiasco of the lawsuit was due to Massar: (1) not paying medical providers within a reasonable period of time after he received the settlement funds; (2) using Pegasus's bills, records, and treatment to obtain a settlement, thereby representing that Pegasus furnished Paulson the services and treatment referenced therein and Pegasus's charges were reasonable and necessary; (3) promising to pay Pegasus $8,000 while apparently knowing that Paulson was allegedly disputing certain Pegasus services but not telling Pegasus about this dispute when asking for the reduction; (4) waiting years to pay providers and making preferential payments to certain providers that Massar fancied: (5) paying American Chiropractic despite Paulson's express instructions not to; (6) not paying Pegasus despite Paulson's instruction to pay it; (7) providing inconsistent and dubious testimony regarding his own conduct and reasoning; (8) waiting over three years to file an interpleader after the 2019 settlement and then waiting nearly six months more before obtaining a hearing on the interpleader request; (9) failing to effectively communicate with Paulson; and (10) demonstrating an absence of candor in his representation of Paulson and in his dealings with Pegasus. RR Vol. 2, pp. 165, 190-191, 193, 195-196, 215, 221-222; RR Vol. 3, pp. 105, 111, 113-115.

For interpleader, there must be rival claims, an unconditional tender, and the

interpleading party must be an innocent stakeholder. *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850-52 (Tex. 2018); *Young v. Gumfory*, 322 S.W.3d 731, 741 (Tex. App. – Dallas 2010, no pet.); *Tri-State Pipe & Equip., Inc. v. Southern Cty. Mut. Ins. Co.*, 8 S.W.3d 394, 402 (Tex. App. – Texarkana 1999, no pet.). In addition, the interpleading party must assert the interpleader timely and without delay. *Rodriguez*, 547 S.W.3d at 850; *Young*, 322 S.W.3d at 743. Failure to satisfy all of these requirements precludes interpleader relief. *Heggy v. American Trading Employee Retirement Acct. Plan*, 123 S.W.3d 770, 775 (Tex. App. – Houston [14th Dist.] 2003, pet. denied).

Massar glosses over these elements and even misstates that the timing requirement is not a factor. *Appellant's Brief*, pp. 27-30. But unquestionably, Massar did not satisfy the interpleader elements. First, Massar is not an innocent stakeholder. Massar is responsible for the fiasco of the lawsuit as Pegasus has repeatedly shown starting from not timely disclosing the settlements of $55,000 to Pegasus; that Massar was aware of a dispute over Pegasus's bill when he requested and obtained a reduction; Massar previously secured Paulson's agreement to the amount of Pegasus's bill ($15,990) in a March 2019 settlement statement; that Massar failed to pay the $8,000 that he promised to pay Pegasus without any contingencies other than Pegasus would accept this amount as full payment; that Paulson instructed Massar to pay Pegasus; Massar refused to follow Paulson's instructions including not paying

Pegasus when told to do so and paid another provider that Paulson instructed Massar not to pay; and paying certain providers based solely on Massar's preference. *See Brown v. Getty Reserve Oil, Inc.*, 626 S.W.2d 810, 815 (Tex. App. – Amarillo 1981, writ dism'd) (interpleading party responsible for conflicting claims). The trial court rightly concluded Massar was responsible for the lawsuit and was no innocent stakeholder.

Second, there were no rival claims to the $8,000. Paulson instructed Massar to pay Pegasus, but Massar refused. RR Vol. 3, pp. 58-59, 62, 75, 79, 81-82, 84, 98. No rival claims existed at the time when Massar filed his interpleader or even before, thus, Massar failed to satisfy this essential element.

Third, Massar's interpleader and overall conduct involves extraordinary and inexcusable delay – no less than two years – December 2020 until December 2022 when Massar's interpleader was filed. Equally significant, Massar waited nearly a year after the lawsuit was filed to file his interpleader, waited four months more for a hearing, and then delayed nearly a month after the May 7th order was entered to pay the $8,000. This unreasonable and extraordinary delay precludes interpleader. *Heggy*, 123 S.W.3d at 775.

Because Massar failed to satisfy all interpleader elements, Massar was not

entitled to discharge.[3]

As a final argument, Massar complains that the trial court judgment failed to award the $8,000, and this money should be awarded to Pegasus. As a party to the lawsuit and on the wrong side of the February 21, 2025 judgment, it was incumbent on Massar to make any objections and challenges to the judgment in the trial court, which he failed to do. *See Tex. R. App. P.* 33.1. Massar's failure to do so waives any such complaint.[4]

## V. PEGASUS ESTABLISHED ITS ALTERNATE CLAIM FOR PROMISSORY ESTOPPEL AND ENTITLEMENT TO ATTORNEY'S FEES

### A. Promissory Estoppel

Massar argues that Pegasus cannot recover on its alternate claim for promissory estoppel because the LOP is a written contract. *Brief of Appellant*, pp. 32-33. Massar misanalyzes this cause of action, the judgment rendered, and inadequately briefs the issue altogether.

As an alternate ground for recovery, the judgment awards Pegasus $8,000 for

---

[3] In Massar's brief, he states that the trial court did not abuse its discretion in granting interpleader, attempting to leave the false impression that Massar was granted an interpleader discharge. *Appellant's Brief*, p. 30. The trial court denied Massar all relief except permitting him to pay $8,000 into the court's registry. CR 17. Massar does not complain that the trial court abused its discretion in only permitting him to tender the $8,000 in funds into the court's registry. Accordingly, any complaint regarding interpleader by Massar is waived.

[4] Assuming the judgment is affirmed and no further appeals, the parties may return to the trial court for satisfaction and collection of the judgment. Massar may then ask the trial court to pay the $8,000 to Pegasus as part of satisfaction of the judgment. Alternatively, Massar may pay the entire judgment and request the return of the interpled funds.

---

its promissory estoppel claim. As Massar states in his brief, "[p]romissory estoppel may apply to a promise outside of [a] contract between the parties." *Appellant's Brief*, p. 32. Massar goes on to acknowledge that promissory estoppel is available to Pegasus if the claim rests on promises independent of the LOP and is based on an actual promise. *Id.* at pp. 32-33. Massar then proclaims that there is no evidence of any promise by Massar to Pegasus outside the LOP and the promissory estoppel claim is not supported in law or by evidence. *Id.* at p. 33.

Like Massar's other claims, this point of error is inadequately briefed and waived. *Tex. R. App. P.* 38.1(i); *Trimcos*, 649 S.W.3d at 921; *Crawford*, 171 S.W.3d at 338. Massar provides no reasoning, analysis, and/or authority for why Massar's promise to pay Pegasus $8,000 to settle Paulson's bill is not an independent promise that entitles Pegasus to a recovery on its promissory estoppel claim. *See Appellant's Brief*, pp. 32-33. Bald conclusions devoid of authority and analysis constitutes waiver and inadequate briefing.

Massar's inadequate briefing is predictable in light of the evidence at trial. It is undisputed that Massar promised to pay Pegasus $8,000 out of the liability settlement if Pegasus would accept that sum in full satisfaction of Paulson's bill. The December 2nd mail provides:

**Ronald Paulson, III**
1 message

Johannes Massar <hans.massar@att.net>                    Wed, Dec 2, 2020 at 10:29 AM
To: Pegasuspain Support <support@pegasuspain.com>

Good Morning,

My office is trying to settle a bill for Mr. Ronald Paulson, III, Date of Birth 01/17/1990. We were able
to settle this case with the liability carrier
for the policy limit of $30,000. Mr. Paulson has approximately $46,000 in medical debt due to this
accident. Will your office be able to reduce Mr. Paulson's balance of $15,990 to $8,000? If we have
an agreement to this amount please sign below and return.

Per your request here is a full settlement breakdown:
Pegasus Pain Management : $15,990
MRI Centers of Texas : $4,390
Preferred Imaging of Plano : $4,740
Pinnacle Pharma : $1,537
Onto Orthopedics : $3,247
Pedro Nosnik : $7,230
ASP Cares : $498
American Chiropractic: $8,314

Agree to _____

Thank you for your time,        12.02.20
Britney

**Johannes B. (Hans) Massar**
Attorney at Law
310 E. Interstate 30, Suite 100
Garland, Texas 75043
Phone 972.226.5552
Fax    972.226.5565

RR Vol. 4, Plaintiff's Ex. 16, Defendant's Ex. 2.

The December 2nd email states that a $30,000 recovery was made, that Paulson

has $46,000 in medical bills including a $15,990 balance with Pegasus, and that

Massar promises to pay Pegasus $8,000 in full payment if Pegasus agrees. The final

paragraph states: "If we have an agreement to this amount please sign below and

return. *Id.* Pegasus agreed on the very same day. *Id.*

A promise for promissory estoppel purposes is a declaration that binds the

person who makes it to act or refrain from acting in a particular way and conversely

gives the person to whom the promise is made the right to expect compliance with the promise. *Traco, Inc. v. Arrow Glass Co., Inc.*, 814 S.W.2d 186, 190 (Tex. App. – San Antonio 1991, writ denied). The promise must be sufficiently definite to be enforced. *Gilmartin v. KVTV-Channel 13*, 985 S.W.2d 553, 558 (Tex. App. – San Antonio 1998, no pet.); *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 570 (Tex. App. – Dallas 1989, no writ).

Massar's written promise checks all boxes for promissory estoppel. It is definite and binds Massar to pay Pegasus the sum of $8,000 to settle Paulson's balance which was reasonably and substantially relied on by Pegasus to its detriment. *See Gilmartin*, 985 S.W.2d at 558; *Traco*, 814 S.W.2d at 192. Injustice may only be avoided by enforcing Massar's promise. *Collins v. Walker*, 341 S.W.3d 570, 573-74 (Tex. App. – Houston [14th Dist.] 2011, no pet.). Even if Massar's complaint is not waived, Massar's promise to Pegasus substantiates Pegasus's promissory estoppel recovery.

## B. Attorney's Fees

Massar argues that Pegasus may not recover attorney's fees for its promissory estoppel claim. Massar devotes two sentences to this contention, which constitutes inadequate briefing and waiver of any complaint that he might make.

But even assuming Massar did not waive this complaint, the weight of Texas authority holds that attorney's fees are recoverable for a successful promissory

estoppel claim. *Corpus Christi Day Cruise, LLC v. Christus Spohn Health Sys.*, 398 S.W.3d 303, 315 (Tex. App. – Corpus Christi 2012, pet. denied); *Traco*, 814 S.W.2d at 193; *see also Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 528 (Tex. App. – Eastland 2015, pet. denied) (noting weight of authority in Texas allows for the recovery of attorney's fees for a promissory estoppel claim).

Massar does not provide any argument or analysis why Pegasus cannot recover attorney's fees and merely cites to *Doctors Hospital 1997, LP v Sambuca Houston, LP*, 154 S.W.3d 634, 638 (Tex. App. – Houston [14th Dist.] 2004, pet. dism'd). Massar does not confront the fact that *Doctors Hospital* is contrary to both Texas as well as federal authority. *See Preload Tech. Inc. v. A.B. & J. Constr. Co. Inc.*, 696 F.2d 1080, 1094-95 (5th Cir. 1983); *Turner*, 485 S.W.3d at 528.

Nor does Massar address *Tex. Civ. Prac. & Rem. Code* § 38.005 which provides that Chapter 38, including Section 38.001(8), should be "liberally construed." Section 38.005 is inapposite to the general rule that a statute that authorizes the recovery of attorney's fees is penal and must be construed strictly. *Bloom v. Bloom*, 767 S.W.2d 463, 471 (Tex. App. – San Antonio 1989, writ denied).

Since *Doctors Hospital* was decided in 2004, it has not been relied on by other Texas courts to reject the recovery of attorney's fees for a promissory estoppel claim. Quite the opposite. The list of courts allowing for the recovery of attorney's fees for a promissory estoppel claim has only increased. *See Raym v. Tupelo Management,*

*LLC*, No. 02-21-00071-CV, 2022 WL 60722, at *4 (Tex. App. – Fort Worth Jan. 6, 2022, no pet.); *MedFinManager, LLC v. Salas*, No. 04-20-00051-CV, 2021 WL 3742681, at *7 (Tex. App. – San Antonio Aug. 25, 2021, pet. denied).

Moreover, the genesis for permitting the recovery of attorney's fees for a promissory estoppel claim comes from *Preload Tech*, 696 F.2d at 1094-95, adopted by Texas courts, which applied Section 38.001(8) to a promissory estoppel claim by noting the liberal construction afforded under Section 38.005. In *1/2 Price Checks Cashed v. United Auto Ins. Co.*, the Texas Supreme Court, citing *Preload* with favor, held that Section 38.001 should be liberally construed, noting this liberal construction of Section 38.001(8) permits the recovery of attorney's fees for a promissory estoppel claim. 344 S.W.3d 378, 388 (Tex. 2011).

Even if not inadequately briefed, *Doctors Hospital* is without viability and has been discredited by the Texas Supreme Court in *1/2 Price Checks*.

Not only has Massar waived his complaint concerning attorney's fees awarded to Pegasus for its promissory estoppel claim, but Texas and federal authority have discredited reliance on *Doctors Hospital* for any holding to the contrary. Accordingly, the award of attorney's fees on Pegasus's alternate claim for promissory estoppel should be affirmed.

## CONCLUSION

Massar has failed to adequately brief any of his appellate complaints, thereby waiving any error in the trial court. But even assuming that Massar did not waive his issues, all of Massar's arguments fail, are without merit, and the February 2025 judgment should be affirmed.

WHEREFORE, PREMISES CONSIDERED, Appellee prays this Court affirm the Judgment and grant it such other and further relief to which it is entitled.

Respectfully submitted,

*/s/ Mark A. Ticer*
Mark A. Ticer
State Bar No. 20018900
mticer@ticerlaw.com
Jennifer W. Johnson
State Bar No. 24060029
jjohnson@ticerlaw.com

**LAW OFFICE OF MARK A. TICER**
10440 N. Central Expressway, Suite 600
Dallas, Texas 75231
214-219-4220 – Telephone
214-219-4218 – Facsimile

***ATTORNEYS FOR APPELLEE***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served upon all counsel of record as follows, *via electronic filing*, on this the 1st day of December 2025:

Raymond R. Fernandez, Jr.
State Bar No. 06934275
rfernandez@fernandezllp.com
Robert L. Knebel, Jr.
State Bar No. 11589500
rknebel@fernandezllp.com
**FERNANDEZ LLP**
2515 McKinney Avenue, Suite 920
Dallas, Texas 75201
214-231-2700 – Telephone

*/s/Mark A. Ticer*
Mark A. Ticer

<u>**CERTIFICATE OF COMPLIANCE**</u>

This *Appellee's Brief* complies with the typeface and length requirements of Texas Rule of Appellate Procedure 9.4 because:

(1) This brief complies with typeface and the type style requirements of Rule 9.4(e) because the brief has been prepared in a conventional typeface using Word with Times New Roman 14-point font.

(2) This brief complies with the length requirements of Rule 9.4(i)(2) because it contains 8,067 words, excluding the parts of the brief exempted by Rule 9.4(i)(1).

*/s/Mark A. Ticer*
Mark A. Ticer

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lisa Amerson on behalf of Mark Ticer
Bar No. 20018900
lamerson@ticerlaw.com
Envelope ID: 108589605
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellee's Brief
Status as of 12/2/2025 7:21 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Raymond R.Fernandez | | rfernandez@fernandezllp.com | 12/1/2025 11:14:58 PM | SENT |
| Robert L.Knebel | | rknebel@fernandezllp.com | 12/1/2025 11:14:58 PM | SENT |
| Jennifer WeberJohnson | | jjohnson@ticerlaw.com | 12/1/2025 11:14:58 PM | SENT |
| Mark Ticer | 20018900 | mticer@ticerlaw.com | 12/1/2025 11:14:58 PM | SENT |
| Brooke Bailey | | bbailey@ticerlaw.com | 12/1/2025 11:14:58 PM | SENT |
| Michelle Smith | | msmith@ticerlaw.com | 12/1/2025 11:14:58 PM | SENT |